RAYGOR ET AL. *v.* REGENTS OF THE UNIVERSITY
OF MINNESOTA ET AL.

No. 00–1514.   Argued November 26, 2001—Decided February 27, 2002

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and SCALIA, KENNEDY, and THOMAS, JJ., joined. GINSBURG, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 548. STEVENS, J., filed a dissenting opinion, in which SOUTER and BREYER, JJ., joined, *post*, p. 549.

*Howard L. Bolter* argued the cause for petitioners. With him on the briefs was *Eric Schnapper*.

*Mark B. Rotenberg* argued the cause for respondent. With him on the brief were *Lorie S. Gildea* and *Tracy M. Smith*.

*Deputy Solicitor General Clement* argued the cause for intervenor United States. With him on the brief were *Solicitor General Olson, Assistant Attorney General McCallum, Barbara McDowell, Mark B. Stern*, and *Alisa B. Klein.**

JUSTICE O'CONNOR delivered the opinion of the Court.

In federal court, petitioners asserted state law claims under the supplemental jurisdiction statute, 28 U. S. C.

---

*Briefs of *amici curiae* urging affirmance were filed for the State of Maryland et al. by *J. Joseph Curran, Jr.*, Attorney General of Maryland, *Andrew Baida*, Solicitor General, *Robert H. Kono*, Acting Attorney General of Guam, and *Dan Schweitzer*, and by the Attorneys General for their respective States as follows: *Bruce M. Botelho* of Alaska, *Ken Salazar* of Colorado, *Richard Blumenthal* of Connecticut, *M. Jane Brady* of Delaware, *Robert A. Butterworth* of Florida, *Earl I. Anzai* of Hawaii, *Steve Carter* of Indiana, *Thomas J. Miller* of Iowa, *Richard P. Ieyoub* of Louisiana, *Thomas F. Reilly* of Massachusetts, *Mike Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Wayne Stenehjem* of North Dakota, *Betty D. Montgomery* of Ohio, *W. A. Drew Edmondson* of Oklahoma, *D. Michael Fisher* of Pennsylvania, *Charles M. Condon* of South Carolina, *John Cornyn* of Texas, *Mark L. Shurtleff* of Utah, *William H. Sorrell* of Vermont, and *Randolph Beales* of Virginia; and for the National Conference of State Legislatures et al. by *Richard Ruda* and *James I. Crowley*.

§ 1367 (1994 ed.), against respondent university, an arm of the State of Minnesota. Those claims were dismissed on Eleventh Amendment grounds, and petitioners refiled them in state court past the period of limitations. The supplemental jurisdiction statute purports to toll the period of limitations for supplemental claims while they are pending in federal court and for 30 days after they are dismissed. § 1367(d). The Minnesota Supreme Court held that provision unconstitutional when applied to claims against nonconsenting state defendants, such as respondent university, and dismissed petitioners' claims. We affirm the judgment on the alternative ground that the tolling provision does not apply to claims filed in federal court against nonconsenting States.

I

In August 1995, petitioners Lance Raygor and James Goodchild filed charges with the Equal Employment Opportunity Commission (EEOC). The charges alleged that their employer, the University of Minnesota, discriminated against them on the basis of age in December 1994 by attempting to compel them to accept early retirement at the age of 52. After petitioners refused to retire, the university allegedly reclassified petitioners' jobs so as to reduce their salaries. App. to Pet. for Cert. A–45; Brief for Petitioners 3.

The EEOC cross-filed petitioners' charges with the Minnesota Department of Human Rights (MDHR) and later issued a right-to-sue letter on June 6, 1996, advising that petitioners could file a lawsuit within 90 days under the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U. S. C. § 621 et seq. (1994 ed. and Supp. V). Brief for United States 5. The MDHR likewise issued right-to-sue letters on July 17, 1996, advising petitioners that they could file suit within 45 days under the Minnesota Human Rights Act (MHRA), Minn. Stat., ch. 363 (1991). 620 N. W. 2d 680, 681 (Minn. 2001); App. to Pet. for Cert. A–46 to A–47.

On or about August 29, 1996, each petitioner filed a separate complaint against respondent Board of Regents of the University of Minnesota (hereinafter respondent), in the United States District Court for the District of Minnesota. 620 N. W. 2d, at 681; App. to Pet. for Cert. A–41. Each complaint alleged a federal cause of action under the ADEA and a state cause of action under the MHRA. The suits were subsequently consolidated. 604 N. W. 2d 128, 130 (Minn. App. 2000). Respondent filed answers to these complaints in September 1996, setting forth eight affirmative defenses, including that the suits were "'barred in whole or in part by Defendant's Eleventh Amendment immunity.'" Brief for Petitioners 4. The District Court entered a scheduling plan that the parties agreed upon. According to the plan, discovery would finish by May 30, 1997, and dispositive motions would be filed by July 15, 1997. *Ibid.* The parties then engaged in discovery as well as mediation. *Ibid.*

In early July 1997, respondent filed its motion to dismiss petitioners' claims pursuant to Federal Rule of Civil Procedure 12(b)(1). Brief for Petitioners 5, n. 5. The motion argued that the federal and state law claims were barred by the Eleventh Amendment. Brief for Respondent Regents of the University of Minnesota 5. Petitioners' response acknowledged respondent's "'potential Eleventh Amendment immunity from state discrimination claims in Federal Court,'" but urged the District Court to exercise supplemental jurisdiction over the state claims if the federal claims were upheld. Brief for Petitioners 5–6. On July 11, 1997, the District Court granted respondent's Rule 12(b)(1) motion and dismissed all of petitioners' claims. App. to Pet. for Cert. A–39. Petitioners appealed, but the appeal was stayed pending this Court's decision in *Kimel* v. *Florida Bd. of Regents,* 528 U. S. 62 (2000). 620 N. W. 2d, at 682. *Kimel* held that the "ADEA does not validly abrogate the States' sovereign immunity." 528 U. S., at 92. Given that result, petitioners moved to withdraw their appeal, and it

was dismissed in January 2000. 620 N. W. 2d, at 682; Brief for Petitioners 6–7.

In the meantime, approximately three weeks after the Federal District Court had dismissed their state law claims, petitioners refiled their state law claims in Hennepin County District Court. 620 N. W. 2d, at 682. Respondent's answer asserted that "'plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.'" Brief for Petitioners 7. The state court initially stayed the lawsuit because of the pending federal appeal, but lifted the stay in December 1998 for the purpose of allowing respondent to move for dismissal on statute of limitations grounds. 620 N. W. 2d, at 682. Respondent moved for summary judgment in February 1999, arguing that petitioners' state claims were barred by the applicable 45 day statute of limitations. See Minn. Stat. §§ 363.06, subd. 3, 363.14, subd. 1(a)(1) (2000). Respondent also argued that the tolling provision of the federal supplemental jurisdiction statute, 28 U. S. C. § 1367, did not apply to toll the limitations period on the state law claims while they were pending in federal court because the Federal District Court never had subject matter jurisdiction over petitioners' ADEA claims. Petitioners argued that the tolling provision of the supplemental jurisdiction statute applied because their state law claims had been dismissed without prejudice. App. to Brief for Petitioners B–3, B–4. The State District Court treated respondent's motion for summary judgment as a motion to dismiss and granted it, holding that § 1367(d) did "not apply . . . because the federal district court never had 'original jurisdiction' over the controversy" since "both the state and federal claims were dismissed for lack of subject matter jurisdiction." *Id.*, at B–5, B–6.

The Minnesota Court of Appeals reversed. The court first decided that the Federal District Court had original jurisdiction over the case before respondent's Eleventh Amendment defense was "successfully asserted." 604 N. W.

2d, at 132 (citing *Wisconsin Dept. of Corrections* v. *Schacht*, 524 U. S. 381 (1998)). The court then held that § 1367(d) applied to toll the statute of limitations for petitioners' state law claims because that provision "allows tolling of any claim dismissed by a federal district court, whether dismissed on Eleventh Amendment grounds or at the discretion of the federal district court under [§ 1367](c)." 604 N. W. 2d, at 132–133.

The Minnesota Supreme Court reversed. The court noted that respondent was an arm of the State, and found that the federal tolling provision facially applied to petitioners' state law claims. 620 N. W. 2d, at 684, 687. The court concluded, however, "that application of section 1367(d) to toll the statute of limitations applicable to state law claims against an unconsenting state defendant first filed in federal court but then dismissed and brought in state court is an impermissible denigration of [respondent's] Eleventh Amendment immunity." *Id.*, at 687. The court thus concluded that § 1367(d) could not constitutionally apply to toll the statute of limitations for petitioners' state law claims, and it dismissed those claims. We granted certiorari, 532 U. S. 1065 (2001), on the question whether 28 U. S. C. § 1367(d) is unconstitutional as applied to a state defendant.

## II

In *Mine Workers* v. *Gibbs*, 383 U. S. 715 (1966), this Court held that federal courts deciding claims within their federal-question subject matter jurisdiction, 28 U. S. C. § 1331, may decide state law claims not within their subject matter jurisdiction if the federal and state law claims "derive from a common nucleus of operative fact" and comprise "but one constitutional 'case.'" *Mine Workers, supra,* at 725. Jurisdiction over state law claims in such instances was known as "pendent jurisdiction." This Court later made clear that, absent authorization from Congress, a district court could not exercise pendent jurisdiction over claims involving par-

ties who were not already parties to a claim independently within the court's subject matter jurisdiction. See *Finley* v. *United States*, 490 U. S. 545 (1989).

In the wake of *Finley*, the Federal Courts Study Committee recommended that "Congress expressly authorize federal courts to hear any claim arising out of the same 'transaction or occurrence' as a claim within federal jurisdiction, including claims, within federal question jurisdiction, that require the joinder of additional parties." Report of Federal Courts Study Committee 47 (Apr. 2, 1990). Soon thereafter, Congress enacted the supplemental jurisdiction statute, 28 U. S. C. § 1367, as part of the Judicial Improvements Act of 1990. Subsection (a) of § 1367 states that

> "[e]xcept as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

Subsection (b) places limits on supplemental jurisdiction when the district court's original jurisdiction is based only on diversity of citizenship jurisdiction under 28 U. S. C. § 1332 (1994 ed. and Supp. V). Subsection (c) allows district courts to decline to exercise supplemental jurisdiction in certain situations, such as when a "claim raises a novel or complex issue of State law." § 1367(c)(1) (1994 ed.).

Petitioners originally sought to have their state law claims heard in federal court as supplemental claims falling under § 1367(a). App. to Brief for Petitioners B–3. Prior to the enactment of § 1367, however, this Court held that the Eleventh Amendment bars the adjudication of pendent state law

claims against nonconsenting state defendants in federal court. See *Pennhurst State School and Hospital* v. *Halderman*, 465 U. S. 89, 120 (1984). In that context, the Eleventh Amendment was found to be an "explicit limitation on federal jurisdiction." *Id.*, at 118. Consequently, an express grant of jurisdiction over such claims would be an abrogation of the sovereign immunity guaranteed by the Eleventh Amendment. Before Congress could attempt to do that, it must make its intention to abrogate "'unmistakably clear in the language of the statute.'" *Dellmuth* v. *Muth*, 491 U. S. 223, 228 (1989) (quoting *Atascadero State Hospital* v. *Scanlon*, 473 U. S. 234, 242 (1985)).

The most that can be said about subsection (a), however, is that it is a general grant of jurisdiction, no more specific to claims against nonconsenting States than the one at issue in *Blatchford* v. *Native Village of Noatak*, 501 U. S. 775 (1991). There, we considered whether 28 U. S. C. § 1362 contained a clear statement of an intent to abrogate state sovereign immunity. That grant of jurisdiction provides that

> "[t]he district courts shall have original jurisdiction of *all civil actions*, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." (Emphasis added.)

Such a facially broad grant of jurisdiction over "all civil actions" could be read to include claims by Indian tribes against nonconsenting States, but we held that such language was insufficient to constitute a clear statement of an intent to abrogate state sovereign immunity. *Blatchford, supra*, at 786. Likewise, we cannot read § 1367(a) to authorize district courts to exercise jurisdiction over claims against nonconsenting States, even though nothing in the statute expressly excludes such claims. Thus, consistent with *Blatch-*

*ford,* we hold that § 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants.

Even so, there remains the question whether § 1367(d) tolls the statute of limitations for claims against nonconsenting States that are asserted under § 1367(a) but subsequently dismissed on Eleventh Amendment grounds. Subsection (d) of § 1367 provides that

> "[t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

On its face, subsection (d) purports to apply to dismissals of "*any* claim asserted under subsection (a)." *Ibid.* (emphasis added). Thus, it could be broadly read to apply to any claim technically "asserted" under subsection (a) as long as it was later dismissed, regardless of the reason for dismissal. But reading subsection (d) to apply when state law claims against nonconsenting States are dismissed on Eleventh Amendment grounds raises serious doubts about the constitutionality of the provision given principles of state sovereign immunity. If subsection (d) applied in such circumstances, it would toll the state statute of limitations for 30 days in addition to however long the claim had been pending in federal court. This would require a State to defend against a claim in state court that had never been filed in state court until some indeterminate time after the original limitations period had elapsed.

When the sovereign at issue is the United States, we have recognized that a limitations period may be "a central condition" of the sovereign's waiver of immunity. *United States* v. *Mottaz,* 476 U. S. 834, 843 (1986); see also *Block* v. *North Dakota ex rel. Board of Univ. and School Lands,* 461 U. S. 273, 287 (1983) ("When waiver legislation contains a statute

of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity"). In suits against the United States, however, there is a rebuttable presumption that equitable tolling under federal law applies to waivers of the United States' immunity. See *Irwin* v. *Department of Veterans Affairs,* 498 U. S. 89, 95 (1990). From this, the dissent argues that any broadening of a State's waiver of immunity through tolling under § 1367(d) presumptively does not violate the State's sovereign immunity. *Post,* at 552–553, and n. 11 (opinion of STEVENS, J.). But this Court has never held that waivers of a State's immunity presumptively include all federal tolling rules, nor is it obvious that such a presumption would be "a realistic assessment of legislative intent." *Irwin, supra,* at 95.

Moreover, with respect to suits against a state sovereign in its own courts, we have explained that a State "may prescribe the terms and conditions on which it consents to be sued," *Beers* v. *Arkansas,* 20 How. 527, 529 (1858), and that "[o]nly the sovereign's own consent could qualify the absolute character of [its] immunity" from suit in its own courts, *Nevada* v. *Hall,* 440 U. S. 410, 414 (1979). Thus, although we have not directly addressed whether federal tolling of a state statute of limitations constitutes an abrogation of state sovereign immunity with respect to claims against state defendants, we can say that the notion at least raises a serious constitutional doubt.

Consequently, we have good reason to rely on a clear statement principle of statutory construction. When "Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.'" *Will* v. *Michigan Dept. of State Police,* 491 U. S. 58, 65 (1989) (quoting *Atascadero, supra,* at 242). This principle applies when Congress "intends to pre-empt the historic powers of the States" or when it legislates in "'traditionally sensitive areas'" that "'affec[t] the federal balance.'"

*Will, supra,* at 65 (quoting *United States* v. *Bass,* 404 U. S. 336, 349 (1971)). In such cases, the clear statement principle reflects "an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere." *Gregory* v. *Ashcroft,* 501 U. S. 452, 461, 464 (1991).

Here, allowing federal law to extend the time period in which a state sovereign is amenable to suit in its own courts at least affects the federal balance in an area that has been a historic power of the States, whether or not it constitutes an abrogation of state sovereign immunity. Thus, applying the clear statement principle helps "'assur[e] that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision.'" *Will, supra,* at 65 (quoting *Bass, supra,* at 349). This is obviously important when the underlying issue raises a serious constitutional doubt or problem. See *Vermont Agency of Natural Resources* v. *United States ex rel. Stevens,* 529 U. S. 765, 787 (2000) (relying in part on clear statement principle to decide the False Claims Act, 31 U. S. C. §§ 3729–3733 (1994 ed.), did not authorize "an action in federal court by a *qui tam* relator against a State" and avoiding whether such a suit would violate the Eleventh Amendment, an issue raising a serious constitutional doubt); *Gregory, supra,* at 464 (relying on clear statement principle to determine that state judges were excluded from the ADEA in order to "avoid a potential constitutional problem" given the constraints on the Court's "ability to consider the limits that the state-federal balance places on Congress' powers under the Commerce Clause").

The question then is whether § 1367(d) states a clear intent to toll the limitations period for claims against nonconsenting States that are dismissed on Eleventh Amendment grounds. Here the lack of clarity is apparent in two respects. With respect to the *claims* the tolling provision covers, one could read § 1367(d) to cover any claim "asserted" under subsec-

tion (a), but we have previously found similarly general language insufficient to satisfy clear statement requirements. For example, we have held that a statute providing civil remedies for violations committed by "'*any* recipient of Federal assistance'" was "not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment" even when it was undisputed that a state defendant was a recipient of federal aid. *Atascadero*, 473 U. S., at 245–246 (quoting 29 U. S. C. § 794a(a)(2) (1982 ed.) (emphasis in original)). Instead, we held that "[w]hen Congress chooses to subject the States to federal jurisdiction, it must do so specifically." 473 U. S., at 246. Likewise, § 1367(d) reflects no specific or unequivocal intent to toll the statute of limitations for claims asserted against nonconsenting States, especially considering that such claims do not fall within the proper scope of § 1367(a) as explained above.

With respect to the *dismissals* the tolling provision covers, one could read § 1367(d) in isolation to authorize tolling regardless of the reason for dismissal, but § 1367(d) occurs in the context of a statute that specifically contemplates only a few grounds for dismissal. The requirements of § 1367(a) make clear that a claim will be subject to dismissal if it fails to "form part of the same case or controversy" as a claim within the district court's original jurisdiction. Likewise, § 1367(b) entails that certain claims will be subject to dismissal if exercising jurisdiction over them would be "inconsistent" with 28 U. S. C. § 1332 (1994 ed. and Supp. V). Finally, § 1367(c) (1994 ed.) lists four specific situations in which a district court may decline to exercise supplemental jurisdiction over a particular claim. Given that particular context, it is unclear if the tolling provision was meant to apply to dismissals for reasons unmentioned by the statute, such as dismissals on Eleventh Amendment grounds. See *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 809 (1989) ("It is a fundamental canon of statutory construction

that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme"). In sum, although § 1367(d) may not clearly exclude tolling for claims against nonconsenting States dismissed on Eleventh Amendment grounds, we are looking for a clear statement of what the rule *includes*, not a clear statement of what it *excludes*. See *Gregory, supra*, at 467. Section 1367(d) fails this test. As such, we will not read § 1367(d) to apply to dismissals of claims against nonconsenting States dismissed on Eleventh Amendment grounds.

In anticipation of this result, petitioners argue that the tolling provision should be interpreted to apply to their claims because Congress enacted it to prevent due process violations caused by state claim preclusion and anti-claim-splitting laws. Brief for Petitioners 45; Reply Brief for Petitioners 5–12. In other words, petitioners contend that Congress enacted the tolling provision to enforce the Due Process Clause of the Fourteenth Amendment against perceived state violations. We have previously addressed the argument that if a statute were passed pursuant to Congress' § 5 powers under the Fourteenth Amendment, federalism concerns "might carry less weight." *Gregory*, 501 U. S., at 468. We concluded, however, that "the Fourteenth Amendment does not override all principles of federalism," *id.*, at 469, and held that insofar as statutory intent was ambiguous, we would "not attribute to Congress an intent to intrude on state governmental functions regardless of whether Congress acted pursuant to . . . § 5 of the Fourteenth Amendment." *Id.*, at 470. That same rule applies here. As already demonstrated, it is far from clear whether Congress intended tolling to apply when claims against nonconsenting States were dismissed on Eleventh Amendment grounds. Thus, it is not relevant whether Congress acted pursuant to § 5.

Petitioners also argue that our construction of the statute does not resolve their case because respondent consented to

suit in federal court. Reply Brief for Petitioners 2–4. We have stated that "[a] sovereign's immunity may be waived" and have "held that a State may consent to suit against it in federal court." *Pennhurst,* 465 U. S., at 99 (citing *Clark* v. *Barnard,* 108 U. S. 436, 447 (1883)). Petitioners claim that respondent consented to suit by not moving to dismiss petitioners' state law claims on Eleventh Amendment grounds until July 1997, some 10 months after the federal lawsuits were filed in August 1996. Yet respondent raised its Eleventh Amendment defense at the earliest possible opportunity by including that defense in its answers that were filed in September 1996. Given that, we cannot say that respondent "unequivocally expressed" a consent to be sued in federal court. *Pennhurst, supra,* at 99 (citing *Edelman* v. *Jordan,* 415 U. S. 651, 673 (1974)). The fact that respondent filed its motion in July 1997 is as consistent with adherence to the pretrial schedule as it is with anything else.

Indeed, such circumstances are readily distinguishable from the limited situations where this Court has found a State consented to suit, such as when a State voluntarily invoked federal court jurisdiction or otherwise "ma[de] a 'clear declaration' that it intends to submit itself to our jurisdiction." *College Savings Bank* v. *Florida Prepaid Postsecondary Ed. Expense Bd.,* 527 U. S. 666, 676 (1999). And even if we were to assume for the sake of argument that consent could be inferred "from the failure to raise the objection at the outset of the proceedings," *Wisconsin Dept. of Corrections* v. *Schacht,* 524 U. S., at 395 (KENNEDY, J., concurring)—a standard this Court has not adopted—consent would still not be found here since respondent raised the issue in its answer. Thus, we find no merit to petitioners' argument that respondent was a consenting state defendant during the federal court proceedings. We express no view on the application or constitutionality of § 1367(d) when a State consents to suit or when a defendant is not a State.

## III

We hold that respondent never consented to suit in federal court on petitioners' state law claims and that § 1367(d) does not toll the period of limitations for state law claims asserted against nonconsenting state defendants that are dismissed on Eleventh Amendment grounds. Therefore, § 1367(d) did not operate to toll the period of limitations for petitioners' claims, and we affirm the judgment of the Minnesota Supreme Court dismissing those claims.

*It is so ordered.*

JUSTICE GINSBURG, concurring in part and concurring in the judgment.

I join the Court's judgment and its opinion in principal part. I agree with the decision's twin rulings. First, prevailing precedent supports the view that, in the absence of a clear statement of congressional intent to abrogate the States' Eleventh Amendment immunity, 28 U. S. C. § 1367(a)'s extension of federal jurisdiction does not reach claims against nonconsenting state defendants. See *ante*, at 540–542. Second, absent "affirmative indicatio[n]" by Congress, see *Vermont Agency of Natural Resources* v. *United States ex rel. Stevens*, 529 U. S. 765, 787 (2000), § 1367(d)'s tolling provision does not reach claims "asserted," but not maintainable, under § 1367(a) against nonconsenting state defendants. See *ante*, at 542–545.

The pathmarking decision, it appears to me, is *Vermont Agency*.[1] There, the Court declined to read the word "person," for purposes of *qui tam* liability, to include a nonconsenting State. Bolstering the Court's conclusion in *Vermont Agency* were the two reinforcements pivotal here:

---

[1] This Court's majority, in contrast to the Minnesota Supreme Court, does not invoke *Alden* v. *Maine*, 527 U. S. 706 (1999), in support of today's decision. I joined the dissent in *Alden* and, in a suitable case, would join a call to reexamine that decision. Cf. *post*, at 554–555 (STEVENS, J., dissenting).

first, "'the ordinary rule of statutory construction' that 'if Congress intends to alter the usual constitutional balance between States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute,'" 529 U. S., at 787 (quoting *Will* v. *Michigan Dept. of State Police,* 491 U. S. 58, 65 (1989)); and second, "the doctrine that statutes should be construed so as to avoid difficult constitutional questions," 529 U. S., at 787. I would not venture further into the mist surrounding § 1367 to inquire, generally, whether § 1367(d) "appl[ies] to dismissals for reasons unmentioned by the statute," *ante,* at 545.[2]

JUSTICE STEVENS, with whom JUSTICE SOUTER and JUSTICE BREYER join, dissenting.

The federal interest in the fair and efficient administration of justice is both legitimate and important. To vindicate that interest federal rulemakers and judges have occasionally imposed burdens on the States and their judiciaries. Thus, for example, Congress may provide for the adjudication of federal claims in state courts, *Testa* v. *Katt,* 330 U. S. 386 (1947), and may direct that state litigation be stayed during the pendency of bankruptcy proceedings, 11 U. S. C. § 362(a). In appropriate cases federal judges may enjoin the prosecution of state judicial proceedings.[1] By virtue of the Supremacy Clause in Article VI of the Constitution, in all such cases the federal rules prevail "and the Judges in every

---

[2] The supplemental jurisdiction statute, well-reasoned commentary indicates, "is clearly flawed and needs repair." Oakley, Prospectus for the American Law Institute's Federal Judicial Code Revision Project, 31 U. C. D. L. Rev. 855, 936 (1998); see generally *id.,* at 936–945 (canvassing problems with 28 U. S. C. § 1367). For a proposed repair of § 1367, see ALI, Federal Judicial Code Revision Project (Tent. Draft No. 2, Apr. 14, 1998).

[1] The Anti-Injunction Act, 28 U. S. C. § 2283 (1994 ed.), provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding."

The "supplemental jurisdiction" provisions of the Judicial Improvements Act of 1990, 28 U. S. C. § 1367 (1994 ed.), impose a lesser burden on the States than each of these examples, and do so only in a relatively narrow category of cases—those in which both federal- and state-law claims are so related "that they form part of the same case or controversy." Adopting a recommendation of the Federal Courts Committee, Congress in § 1367(a) overruled our misguided decision in *Finley* v. *United States*, 490 U. S. 545 (1989), and expressly authorized federal courts to entertain such cases even when the state-law claim is against a party over whom there is no independent basis for federal jurisdiction.[2]

Subsection (d) of § 1367 responds to the risk that the plaintiff's state-law claim, even though timely when filed as a part of the federal lawsuit, may be dismissed after the state period of limitations has expired. To avoid the necessity of duplicate filings, it provides that the state statute shall be tolled while the claim is pending in federal court and for 30 days thereafter.[3] The impact of this provision on the defendant is minimal, because the timely filing in federal court provides it with the same notice as if a duplicate complaint had also been filed in state court.

---

[2] Title 28 U. S. C. § 1367(a) provides:

"Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

[3] Section 1367(d) provides:

"The period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

The tolling of statutes of limitations is, of course, an ancient[4] and widespread practice.[5] Some federal tolling statutes apply only to federal limitations periods,[6] but others apply to state statutes as well.[7] All of these statutes are broadly worded, and none of them excludes any special category of defendants. The plain text of all these statutes, in-

---

[4] When an equity bill was dismissed to permit the commencement of an action at law, it was the practice of the English courts to consider the statute of limitations tolled during the pendency of the suit in equity. See, *e. g., Anonimous,* 1 Vern. 73, 73–74, 23 Eng. Rep. 320, 320–321 (Ch. 1682) ("[I]f a man sued in Chancery, and pending the suit here, the statute of limitations attached on his demand, and his bill was afterwards dismissed, as being a matter properly determinable at common law: in such case . . . [the court] would not suffer the statute to be pleaded in bar to his demand"); see also *Sturt* v. *Mellish,* 2 Atk. 610, 615, 26 Eng. Rep. 765, 767 (Ch. 1743); *MacKenzie* v. *Marquis of Powis,* 7 Brown 282, 288, 3 Eng. Rep. 183, 187 (H. L. 1737).

[5] Equitable tolling is a background rule that informs our construction of federal statutes of limitations, *Holmberg* v. *Armbrecht,* 327 U. S. 392, 397 (1946), including those statutes conditioning the Federal Government's waiver of immunity to suit, *Irwin* v. *Department of Veterans Affairs,* 498 U. S. 89, 95–96 (1990) ("[T]he same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States"). The rule also is generally applied by state courts, such as the Minnesota courts adjudicating claims under the Minnesota Human Rights Act (MHRA). See, *e. g., Ochs* v. *Streater, Inc.,* 568 N. W. 2d 858, 860 (Minn. App. 1997).

[6] See, *e. g.,* 8 U. S. C. § 1182(a)(9)(B)(iv) (tolling an alien's period of unlawful presence in the United States during certain immigration proceedings); 28 U. S. C. § 2263(b) (1994 ed., Supp. V) (tolling the statute of limitations on filing for habeas corpus relief); 29 U. S. C. § 1854(f) (1994 ed., Supp. V) (tolling the statute of limitations on actions for bodily injury or death to a migrant farmworker).

[7] See, *e. g.,* 11 U. S. C. § 108 (tolling during bankruptcy); 50 U. S. C. App. § 525 (1994 ed.) (Soldiers' and Sailors' Civil Relief Act of 1940) (tolling during military service); 15 U. S. C. § 6606(e)(4) (Y2K Act) (tolling during notice and remediation period for Year 2000 related claims); cf. 42 U. S. C. § 9658 (1994 ed.) (Comprehensive Environmental Response, Compensation, and Liability Act of 1980) (setting uniform limitations-period commencement date in suits under state law for damages due to hazardous release exposure).

cluding § 1367, applies to cases in which a State, or an arm of a State, is named as a defendant. Thus, as the Minnesota Court of Appeals correctly held, "the plain language of subsection (d) allows tolling of any claim dismissed by a federal district court, whether dismissed on Eleventh Amendment grounds or at the discretion of the federal district court under subsection (c)." [8]

The Minnesota Supreme Court reversed, because it considered this Court's holding in *Alden* v. *Maine*, 527 U. S. 706 (1999), to compel the view that § 1367(d) was an invalid attempt by Congress to make the State of Minnesota subject to suit in state court without its consent. [9] Unlike the State in *Alden*, however, Minnesota has given its consent to be sued in its own courts for alleged violations of the MHRA within 45 days of receipt of a notice letter from the State Department of Human Rights. The question whether that timeliness condition may be tolled during the pendency of an action filed in federal court within the 45-day period is quite different from the question whether Congress can entirely abrogate the State's sovereign immunity defense. For the Court's Eleventh Amendment jurisprudence concerns the question *whether* an unconsenting sovereign may be sued, rather than *when* a consenting sovereign may be sued.

The Court recognized this crucial distinction in *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89 (1990), a case in which the application of equitable tolling to a waiver of federal sovereign immunity was at issue. Although the Court required the Government's assent as to whether it may be sued to be "unequivocally expressed," it presumed the rule of equitable tolling applied once assent was established because tolling would "amoun[t] to little, if any, broadening of the congressional waiver." *Id.*, at 95. The Court

---

[8] 604 N. W. 2d 128, 132–133 (2000).

[9] See 620 N. W. 2d 680, 686 (2001) ("[W]e read *Alden* to require that the University's waiver of immunity be limited to the [45-day limitations period]").

reached this holding despite the inclusion in the waiver provision of a limitations period shorter than the one for suits against private parties.

The waiver at issue in this case is more unequivocally expressed than the one in *Irwin*. Minnesota has consented to suit under the MHRA by agreeing to be treated in the same manner as a private employer.[10] The 45-day limitations period is thus applicable to *any* suit under the MHRA, not only those against state entities. In light of such a clear consent to suit, unencumbered by any special limitations period, it is evident that tolling under § 1367(d) similarly "amounts to little, if any, broadening of the [legislature's] waiver."[11] *Ibid.* Given the fact that the timely filing in Federal Court served the purposes of the 45-day period,[12] it

---

[10] See Minn. Stat. § 363.01, subds. 17 and 28 (2000) (defining "employer" to include private entities and "the state and its departments, agencies, and political subdivisions").

[11] It is true enough that we "ha[ve] never held that waivers of a State's immunity presumptively include all federal tolling rules," *ante,* at 543. Of course, we have never held to the contrary, either. But surely our federal sovereign immunity cases shed great light on the question, given our similarly strict analyses of waivers in federal and state sovereign immunity cases. See *College Savings Bank* v. *Florida Prepaid Postsecondary Ed. Expense Bd.,* 527 U. S. 666, 682 (1999) ("[I]n the context of *federal* sovereign immunity—obviously the closest analogy to the present case— it is well established that waivers are not implied. . . . We see no reason why the rule should be different with respect to state sovereign immunity" (citation omitted)).

As the Court observes, *ante,* at 542–543, our federal sovereign immunity cases recognize that a limitations period may serve as a central condition of waiver. The teaching of *Irwin,* however, is that even when a limitations period is a "condition to the waiver of sovereign immunity and thus must be strictly construed," 498 U. S., at 94, application of tolling to that period is presumptively permissible. I can "see no reason why the rule should be different with respect to state sovereign immunity." *College Savings Bank,* 527 U. S., at 682.

[12] The university received notice of the claim and was able to take part fully in the prosecution of the litigation by engaging in extensive discovery and participating in mediation.

seems to me quite clear that the application of the tolling rule does not raise a serious constitutional issue.[13]

It is true, of course, that the federal tolling provision, like any other federal statute that pre-empts state law, "affects the federal balance" even though it does not "constitut[e] an abrogation of state sovereign immunity." *Ante,* at 544. But that consequence is surely not sufficient to exclude state parties from the coverage of statutes of general applicability like the Bankruptcy Code, the Soldiers' and Sailors' Civil Relief Act of 1940, or any other federal statute whose general language creates a conflict with a pre-existing rule of state law.[14] In my judgment, the specific holding in *Alden* v. *Maine* represented a serious distortion of the federal balance intended by the Framers of our Constitution. If that case is now to provide the basis for a rule of construction that will exempt state parties from the coverage of federal statutes of general applicability, whether or not abrogation of Eleventh Amendment immunity is at stake, it will foster unintended and unjust consequences and impose serious burdens on an already-overworked Congress.[15] Indeed, that risk provides

---

[13] Indeed, as an alternative basis for its decision, the Minnesota Court of Appeals concluded that equitable tolling was appropriate. See 604 N. W. 2d, at 133–134. The Minnesota Supreme Court did not disagree with the conclusion that equitable tolling was permissible, but rather found no abuse of discretion in the trial court's refusal of such tolling. See 620 N. W. 2d, at 687.

[14] See, *e. g., Geier* v. *American Honda Motor Co.,* 529 U. S. 861 (2000) (finding pre-emption of common-law tort action by National Traffic and Motor Vehicle Safety Act of 1966); *Boggs* v. *Boggs,* 520 U. S. 833 (1997) (finding pre-emption of state community property laws by Employee Retirement Income Security Act of 1974).

[15] It may also impose serious burdens on already-overworked state courts. Claims brought under state antidiscrimination statutes such as the MHRA, for example, will often be bound up with claims under similar federal statutes, such as 42 U. S. C. § 1983 (1994 ed., Supp. V); Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e *et seq.* (1994 ed. and Supp. V); and the Age Discrimination in Employment Act (ADEA), 29 U. S. C. § 621 *et seq.* (1994 ed. and Supp. V). The state courts have concurrent

an additional reason for reexamining that misguided decision at the earliest opportunity.

Accordingly, I respectfully dissent.

---

jurisdiction over these federal statutes. *Felder* v. *Casey*, 487 U. S. 131, 139 (1988) (§ 1983); *Yellow Freight System, Inc.* v. *Donnelly*, 494 U. S. 820 (1990) (Title VII); 29 U. S. C. § 626(c)(1) (ADEA). As a result of the Court's reading of § 1367(d), many litigants with such mixed claims against state entities may decide to file their entire suits in state court. By doing so, they avoid the cost and confusion of duplicate filings. They also eliminate the risk that a time bar will attach to a claim dismissed from federal court on Eleventh Amendment grounds, which might occur even when, as in this case, Eleventh Amendment immunity was not evident at the time the suit was filed. Thus, in attempting to preserve the "balance between the States and the Federal Government," *ante*, at 543, the Court risks upending that balance by removing from the state courts the assistance of the federal courts in adjudicating many claims.