# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37788

JOHN F. NOAK, M.D., )
)
   Plaintiff-Appellant, )
)
v. )
)
IDAHO DEPARTMENT OF CORRECTION; )
and RICHARD D. HAAS, )
)
   Defendants-Respondents, )
)
and )
)
PRISON HEALTH SERVICES, INC., a )
subsidiary of AMERICAN SERVICES )
GROUP, INC., and DOES 1-10, )
)
   Defendants. )
———————————————————— )

**Boise, December 2011 Term**

**2012 Opinion No. 7**

**Filed: January 6, 2012**

**Stephen W. Kenyon, Clerk**

———————————————

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

The judgment of the district court is <u>affirmed</u>.

Comstock & Bush, Boise, for appellant. John A. Bush argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Emily A. MacMaster argued.

———————————————

J. JONES, Justice

    This case stems from Dr. John F. Noak's dismissal as the medical director for Prison Health Services, Inc. (PHS), which provided medical services for the Idaho Department of Correction (IDOC) under a contract. Noak appeals from the district court's grant of summary judgment in favor of IDOC and Richard D. Haas, an IDOC employee, on claims of breach of an implied covenant of good faith, intentional and negligent infliction of emotional distress,

defamation, and intentional interference with contract. The district court awarded attorney fees to IDOC, which Noak also appeals. We affirm the district court.

## I.
## BACKGROUND

IDOC contracted with PHS to provide medical services for prison inmates. PHS hired Noak as its medical director for the IDOC contract. As medical director, Noak oversaw "all medical services provided by PHS to the various IDOC facilities." Noak was also the principal physician at some of the IDOC facilities, including the South Boise Women's Correctional Center (SBWCC).

On January 30, 2004, Noak treated an SBWCC inmate named Norma Hernandez, who had been ill for several days. Noak attended to Hernandez in an examination room and then helped in returning her to her cell down the hall. The details of Hernandez' trip from the exam room to her cell are "hotly disputed" and are central to the incident giving rise to this case. Noak and IDOC agree that "Hernandez left the exam room accompanied by Ms. [Jana] Nicholson, a certified medical specialist." Noak says that "[h]e heard someone say 'are you going to faint.'" According to Noak, he then went into the hall, positioned himself to support Hernandez if she did faint, determined she was not going to faint, and escorted her to her cell. But, according to Nicholson, Noak "came out of the exam room and 'aggressively' inserted himself between her and the patient." In Nicholson's account, Noak forced Hernandez to "walk 'briskly' down the hall." In Hernandez' version of the facts, Noak grabbed Hernandez by the arm, forced Nicholson to let go of Hernandez, and pushed Nicholson away. According to Hernandez, Noak ushered her down the hall, making her walk on her "tippy toes," and threatened her in the process.

Hernandez filed a complaint about Noak after the incident in the hallway. Hernandez asserted that Noak was "abrupt and rude," that he was unconcerned with her well-being, and that he threatened her with relocation to the Pocatello Women's Correctional Center if she did not "heal quickly." Based on Hernandez' complaint, IDOC Lieutenant Christie Presley issued an order to restrict Noak from SBWCC. Then, on February 12, 2004, Tom Beauclair, IDOC Director at the time, banned Noak from all IDOC facilities while IDOC investigated the incident. PHS placed Noak on administrative leave during the investigation. IDOC began an investigation and then referred the issue to the Ada County Sheriff to investigate Hernandez' allegations that Noak battered her. The Ada County Prosecutor declined to prosecute Noak.

On March 9, 2004, IDOC demanded that PHS replace Noak as medical director under IDOC's contract. IDOC made its demand in a letter that Haas drafted and Beauclair signed. The letter stated that IDOC had the right under its contract with PHS "to demand immediate replacement of 'anyone who has broken the rules and/or regulations of the Department, who poses a risk or unacceptable threat to security of the institution or whose actions are disruptive to a specific institution or the Department.'" PHS removed Noak as medical director and fired him on March 10, 2004.

Then, on March 15, 2004, Haas wrote a letter to the Idaho Board of Medicine (IBOM), notifying it of the occurrence. The letter stated that IDOC investigated a claim of battery against Noak; that Noak allegedly pushed another staff member and grabbed an inmate; that Noak was banned from IDOC facilities; and that IDOC had demanded Noak's replacement as medical director. IBOM took no action against Noak.

In the wake of his firing and the subsequent events, Noak brought this action against PHS, IDOC, and Haas, alleging numerous claims: (1) breach of the covenant of good faith and fair dealing; (2) intentional and negligent infliction of emotional distress; (3) defamation *per se*; (4) tortious interference with contract or prospective economic advantage; and (5) conversion. Each of the defendants moved for summary judgment on all claims against them. Noak ultimately conceded that his conversion claim was meritless, so the court granted summary judgment for all defendants on that count. The district court granted summary judgment to IDOC and Haas on all remaining claims against them, and the court awarded attorney fees to IDOC. The court denied summary judgment to PHS on the claims for breach of the covenant of good faith, negligent infliction of emotional distress, and defamation *per se*. PHS and Noak settled those claims and stipulated to dismissal with prejudice. Noak now appeals the district court's grant of summary judgment to IDOC and Haas. We must determine whether respondents were entitled to summary judgment on any or all of Noak's claims, and whether IDOC was entitled to attorney fees.

## II.
## DISCUSSION

### A.    Standard of review.

In reviewing a grant of summary judgment, this Court applies the same standard as the district court that originally ruled on the motion. *Hoyle v. Utica Mut. Ins. Co.*, 137 Idaho 367, 371, 48 P.3d 1256, 1260 (2002). "The Court exercises free review over the entire record that was

before the district judge to determine whether either side was entitled to summary judgment." *Farber v. Idaho State Ins. Fund*, 147 Idaho 307, 310, 208 P.3d 289, 292 (2009). The district court should grant summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

**B.      IDOC is entitled to summary judgment on Noak's claim for breach of the covenant of good faith and fair dealing.**

IDOC is entitled to summary judgment on Noak's claim for breach of the covenant of good faith and fair dealing because IDOC and Noak had no contractual relationship. Idaho law implies a covenant of good faith and fair dealing when doing so is consistent with the express terms of an agreement between contracting parties. *See Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 750, 9 P.3d 1202, 1214 (2000). When it is implied, "[t]he covenant requires that the parties perform, in good faith, the obligations imposed by their agreement." *Id.* Only a party to a contract may assert a claim for breach of the covenant of good faith and fair dealing. *Tolley v. THI Co.*, 140 Idaho 253, 261, 92 P.3d 503, 511 (2004). Even then, one can maintain a claim for breach of the covenant only when he or she "is denied the right to the benefits of the agreement [the parties] entered into." *Id.*

The district court concluded that Noak and IDOC had no contract and therefore Noak could not maintain his claim. Noak argues that because IDOC's contract with PHS allowed IDOC to unilaterally demand PHS remove its medical director, and because Noak held the medical director position, Noak should have a remedy if IDOC demanded replacement without good faith. Noak concedes, however, that he was "not in a direct contractual relationship with IDOC." To drive the point home, Noak's Reply Brief confirms that he "has not asserted a breach of the contractual provision [of IDOC's contract] because he was admittedly not a party to the contract, nor has he ever asserted that he had a contract with IDOC." Rather, Noak contends that "the implied covenant of good faith and fair dealing *should* attach" in a scenario like the one involving IDOC and PHS, despite the lack of a contractual relationship. IDOC counters that because Noak had no contract with IDOC, and because a claim for breach of the covenant sounds in contract, he cannot maintain the claim. IDOC points to Noak's concession that he had no contract with IDOC as dispositive of the issue.

We agree with IDOC. Noak's concession that he had no contract is indeed dispositive.

4

This Court has said time and again that, to the extent the covenant exists, it is only breached when one party to a contract prevents another party to the contract from realizing a benefit of their mutual agreement. Noak seeks to assert a claim on some nebulous and yet-to-be-recognized theory that he deserves a remedy because he was negatively affected by IDOC's decision. But, as the district court decided, IDOC did not prevent Noak from realizing a benefit of any mutual agreement because there was no such agreement. Accordingly, IDOC was entitled to summary judgment on Noak's claim for breach of the covenant of good faith and fair dealing.

### C.      Noak's claims against IDOC are time barred.

Noak's other claims against IDOC all sound in tort and are therefore to be considered under the Idaho Tort Claims Act (ITCA). When considering claims under the ITCA, the Court employs a three-step process to determine whether summary judgment is appropriate:

> In considering a motion for summary judgment requesting dismissal of a complaint against a governmental entity and its employees under the [ITCA], the trial court must [1] answer whether tort recovery is allowed under the laws of Idaho; and, [2] if so, whether an exception to liability found in the [ITCA] shields the alleged misconduct from liability; and, [3] if no exception applies, whether the merits of the claim as presented for consideration on the motion for summary judgment entitle the moving party to dismissal.

*Harris v. State, Dep't of Health & Welfare*, 123 Idaho 295, 298 n.1, 847 P.2d 1156, 1160 n.1 (1992). *Accord Coonse v. Boise Sch. Dist.*, 132 Idaho 803, 805, 979 P.2d 1161, 1163 (1999) (noting that the Court need only consider the merits of a tort claim against the State if the plaintiff alleges a recognized tort and no ITCA exception applies).

IDOC raised a statute-of-limitations defense to Noak's ITCA claims in the district court and reasserts it here. IDOC contends the claims are time barred because Noak filed this action on December 15, 2006, well beyond the two-year statute in I.C. § 6-911. It first raised the issue in the district court in a motion to dismiss, which the district court denied. The district court treated the motion as one for summary judgment because IDOC supported it with an affidavit. Noak argues that this Court should not even consider the statute-of-limitations question because IDOC has not raised the issue on cross-appeal. Noak further contends that, even if the Court considers the question, any statute of limitations was tolled because Noak originally filed his claims in federal court. Noak filed in federal court on January 30, 2006, and ultimately stipulated to dismiss that action on November 16, 2006. He then filed this action.

5

We conclude that the statute of limitations question is properly before the Court, even though IDOC did not file a cross-appeal. A party must file a cross-appeal only if it seeks to change or add to relief the district court provided, but not when the party asks us to sustain a judgment on grounds presented to, but not relied on by, the district court. *Walker v. Shoshone Cnty.*, 112 Idaho 991, 993, 739 P.2d 290, 292 (1987). In *Walker*, the district court granted Shoshone County summary judgment based on an immunity defense. *Id.* at 992, 739 P.2d at 291. The County had also advanced a statute-of-limitations defense in the district court, but the court denied it. *Id.* When the Walkers appealed, the County offered a statute-of-limitations argument as an alternative basis for affirming the district court. *Id.* But the County had not filed a cross-appeal. *Id.* This Court held that affirming the district court on statute-of-limitations grounds would not add to or change the result of the district court's decision. *Id.* The Court therefore determined that the statute-of-limitations issue was properly before it without the necessity of a cross-appeal. *Id.*

This case is procedurally similar to *Walker*. IDOC raised the ITCA statute-of-limitations defense in the district court, which that court denied. But the district court nonetheless granted IDOC summary judgment. IDOC did not file a cross appeal, but it has raised the statute of limitations as an alternate basis on which we may affirm. We would thus not add to or change the result of the district court's decision by considering the statute of limitations. Accordingly, the statute-of-limitations issue is properly before us, despite IDOC's failure to file a cross-appeal.

Noak filed this action outside the statutory timeframe, and he conceded as much in the district court. The ITCA provides a two year statute of limitations:

> Every claim against a governmental entity permitted under the provisions of this act or against an employee of a governmental entity shall be forever barred, unless an action is begun within two (2) years after the date the claim arose or reasonably should have been discovered, whichever is later.

I.C. § 6-911. Noak filed this action on December 15, 2006. Noak's Notice of Tort Claim lists March 13, 2004 as the date his damages occurred. So, under the statute, Noak missed the filing deadline by about nine months. But Noak contends, and the district court held, that 23 U.S.C. § 1367(d) tolled the ITCA statute of limitations so Noak's complaint was timely.

Federal courts are granted supplemental jurisdiction over certain state law claims under 23 U.S.C. § 1367. Specifically, it grants jurisdiction over state law claims arising from the same

6

case or controversy as an action over which the federal court has original jurisdiction. 23 U.S.C. § 1367(a). Section 1367 further provides

> The period of limitations for any claim asserted under [Section 1367(a)], and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

23 U.S.C. § 1367(d). IDOC argues that this tolling is inapplicable to States and state agencies that have not waived their sovereign immunity, as guaranteed by the Eleventh Amendment to the U.S. Constitution, by voluntarily or purposefully submitting to federal court jurisdiction.

In *Raygor v. Regents of the University of Minnesota*, 534 U.S. 533 (2002), the U.S. Supreme Court considered whether 23 U.S.C. § 1367(d) tolled a statute of limitations for a state law claim brought in state court against a state agency. In that case, the plaintiffs first brought an action in federal court against a Minnesota state entity. *Id.* at 536. "Those claims were dismissed on Eleventh Amendment grounds, and [the plaintiffs] refiled them in state court past the period of limitations." *Id.* The Court affirmed the Minnesota Supreme Court's dismissal of the state action because the state agency "never consented to suit in federal court on [the plaintiffs'] state law claims and [because Section] 1367(d) does not toll the period of limitations for state law claims asserted against nonconsenting state defendants that are dismissed on Eleventh Amendment grounds." *Id.* at 548. In reaching its decision, the Court recognized that, typically, states define the terms on which they waive sovereign immunity, and any time limit set out in a statutory waiver of immunity is central to the state's consent to be sued. *Id.* at 542–43. In other words, compliance with the statute of limitations in a waiver of sovereign immunity is normally a prerequisite to suing a state in its own courts, and only a state may make exceptions to such immunity. *See id.* at 543 ("'[O]nly the sovereign's own consent could qualify the absolute character of [its] immunity' from suit in its own courts." (*citing Nevada v. Hall*, 440 U.S. 410, 414 (1979)) (second alteration in original)). Thus, the Court determined that reading Section 1367(d) to toll a state statute of limitations in state court, and thereby infringe on a state's sovereign immunity, had serious constitutional implications. *Id.* at 543. The Court therefore decided it would only read Section 1367(d) to toll a state statute of limitations, in actions against a state, in state court, if Congress expressed a clear intent for such tolling. *Id.* at 544–45. The Court then concluded that "it is unclear if the tolling provision [of Section 1367(d)]

7

was meant to apply to dismissals for reasons unmentioned by the statute, such as dismissals on Eleventh Amendment grounds." *Id.* at 545. Accordingly, the Court held that Congress had not clearly intended Section 1367(d) to infringe on the state's right to limit its waiver of sovereign immunity from suit in its own courts when a prior federal action was dismissed pursuant to the Eleventh Amendment. *Id.* at 546. In *Jinks v. Richland County, S.C.*, the Court reiterated that "Congress lacks authority under Article I [of the U.S. Constitution] to override a *State's* immunity from suit in its own courts," and that the Court's prior "decisions protect[ed] a *State's* sovereign immunity from congressional abrogation." 538 U.S. 456, 465–66 (2003) (emphasis in original).

The only real distinction between *Raygor* and this case is the manner in which the federal action was dismissed. In *Raygor*, the federal court dismissed the action on Eleventh Amendment grounds while these parties stipulated to dismissal of Noak's federal action. However, the plaintiffs in both cases sued nonconsenting state agencies in federal court and, when those actions failed, they untimely filed suits in state court. Noak makes much of the different ways in which the cases were dismissed, arguing that because Noak's federal action was a stipulated dismissal, *Raygor* does not apply. That reading misses the mark. As noted above, *Raygor* indicated that the tolling provision of Section 1367(d) did not apply in actions against states where dismissal was "for reasons unmentioned by the statute, <u>such as</u> dismissals on Eleventh Amendment grounds." (Emphasis added.) Section 1367(d) does not mention stipulated dismissals by nonconsenting state defendants. Thus, it does not appear that Congress intended to infringe on a state's sovereign immunity in situations such as that presented here. Accordingly, we hold that 23 U.S.C. § 1367(d) did not toll the two-year statute of limitations in this case. Because Noak filed his complaint beyond the limitations period, his ITCA claims against IDOC were untimely.[1]

### D.    Noak's claims against Haas are barred by I.C. § 54-1818.

In his briefing before this Court, Noak claims that Haas defamed him and either negligently or intentionally inflicted emotional distress upon him. It is not entirely clear from the

---

[1] We decline to consider whether Noak's claims against Haas should be dismissed on the same grounds. IDOC has submitted no argument on this ground relating specifically to Haas. Furthermore, it is unclear whether Noak's claims against Haas were premised on actions allegedly taken by him within or without the course and scope of his employment. Since we find other grounds for dismissing any claims against Haas, there is no need to rule upon the application of Section 1367(d) relative to the claim against him.

complaint whether Noak contends that Haas performed such actions within or without the course and scope of his employment. Based upon its reading of the complaint, the district court concluded that Noak had not asserted the infliction of emotional distress claims against Haas. With regard to the defamation claim, the district court held that Haas was immune from suit under I.C. § 54-1818.

Noak contends that the district court erred in concluding that he was not suing Haas for infliction of emotional distress and in applying the immunity provisions of I.C. § 54-1818. The district court apparently made its conclusion about the infliction of emotional distress claims based on the rather threadbare nature of the complaint with regard to allegations against Haas. The only paragraph specifically alleging wrongdoing on the part of Haas states:

> On March 15, 2004, with the knowledge that Noak had been cleared of any criminal charges stemming from the incident at IDOC, David Haas ("Haas") an IDOC employee, sent a letter to the Idaho State Board of Medicine informing them of Hernandez's allegations and requesting that the Board investigate Dr. Noak.

The complaint goes on to assert the defamation count as against all defendants, while failing to specifically name Haas in the count pertaining to infliction of emotional distress. If Haas is subject to suit on both claims, the only action on Haas' part that is alleged in the complaint relates to the March 15, 2004 letter to the IBOM. Giving Noak the benefit of a broad reading of the complaint's allegations, one could conclude that he is alleging that he was both defamed and caused emotional distress by the letter in question.

The district court determined that, regardless of the content of Haas' letter, it could not support a defamation claim because it was a statutorily protected communication under I.C. § 54-1818, which provides in pertinent part:

> A licensed physician and surgeon possessing knowledge of a violation of section 54-1814, Idaho Code, by any other physician and surgeon licensed to practice medicine in Idaho shall with reasonable promptness report such knowledge to the board of medicine or its duly authorized committee, agency or representative, and failure to do so shall subject such person to disciplinary action by the state board of medicine as in its discretion the board shall deem proper, pursuant to procedures provided in chapter 18, title 54, Idaho Code; provided, <u>no person shall be civilly liable</u> for communications, reports or acts of any kind made, given or handled under the provisions of this act.

I.C. § 54-1818. (Emphasis added.) Noak argues that the district court erred because Section 54-

1818 only protects physicians and surgeons from civil liability, not *any* person reporting to the IBOM. Noak thus contends that Haas, as a layperson, cannot rely on the immunity in Section 54-1818. Noak argues that another code provision, I.C. § 54-1840, offers the only protection upon which Haas could rely. And that section, according to Noak, requires Haas to demonstrate that he acted without malice and with a reasonable belief that the reported information was accurate.

This Court has yet to consider I.C. § 54-1818, and the immunity it provides, in the context of a layperson's report to the IBOM. The Court must therefore interpret the statute to determine whether Noak may maintain a defamation action based on Haas' letter. The Court seeks to interpret statutes by giving effect to the "plain, usual, and ordinary meanings" of the statute's words. *Farber v. Idaho State Ins. Fund*, 147 Idaho 307, 310, 208 P.3d 289, 292 (2009). As the district court pointed out, the statute "says 'no person shall be civilly liable for communications, reports or acts of any kind made, given or handled under the provisions of this act.' 'No person' means 'no person.'" "Person" as used in Title 54 means "a natural person." I.C. § 54-1803(9). And, the protection from liability extends to "reports or acts . . . made, given, *or handled* under the provisions of" the statute. One of the express purposes of the Medical Practice Act, of which I.C. § 54-1818 is a part,[2] "is to assure the public health, safety and welfare in the state by the licensure and regulation of physicians." I.C. § 54-1802. The IBOM has broad authority to carry out this purpose by conducting investigations and taking disciplinary action against physicians. I.C. § 54-1806. Thus, nearly any conceivable action taken by the IBOM in connection with physician licensure would be "handled under the provisions of" the Medical Practice Act. The plain, usual, and ordinary meaning of the statute therefore suggests that it provides immunity to any person for communications to the IBOM made in connection with physician performance.

The provision asserted by Noak, I.C. § 54-1840, does not apply here. That section was enacted into law in 1976 as section 10 of the Disabled Physician Act, which is currently codified as I.C. §§ 54-1831–54-1841. 1976 Idaho Sess. Laws, ch. 290, p. 1000. Section 1 of the Act, now I.C. § 54-1831, states, "This act shall be known as the 'Disabled Physician Act.'" Thus, I.C. § 54-1840

---

[2] I.C. § 54-1818 was actually enacted before the present codification of the Medical Practice Act. *See Thomas v. Medical Center Physicians, P.A.*, 138 Idaho 200, 209, 61 P.3d 557, 566 (2002); *see also* 1976 Idaho Sess. Laws, ch. 192, 709 (enacting the statute now codified as I.C. § 54-1818); 1977 Idaho Sess. Laws, ch. 199, 536 (repealing predecessor to Medical Practice Act and enacting the statutes now codified as I.C. § 54-1801 *et seq.*) But because "the legislature undertook an extensive rewriting of the" Medical Practice Act, and left untouched I.C. § 54-1818, it is apparent that references in section 54-1818 to "this act" refer to the Medical Practice Act.

10

applies to disabled physician proceedings and there is no allegation in the complaint that Noak is disabled.

Because Haas' letter to IBOM was a communication within the meaning of I.C. § 54-1818, any claims based upon the letter, including the defamation claim and the infliction of emotional distress claim, are barred by that statute's immunity provision.

### E. IDOC was entitled to attorney fees below, and it is entitled to fees on appeal.

The district court determined that I.C. § 12-120(3) supported its award of fees "based on the two contract claims alleged in this action in Count I of the Complaint and Demand for Jury Trial." The reference of the district court to two contract claims included Noak's assertion that there was an implied covenant of good faith and fair dealing between himself and IDOC and a claim not asserted on appeal—that IDOC was his statutory employer under Idaho's workers' compensation law. The court, "[a]fter consideration of all the factors set forth in I.R.C.P. 54(e)(3)," concluded that $18,000 was a reasonable fee award. Noak asserts that the court erred in making the award, arguing that I.C. § 12-120(3) does not support an award because his claim was not founded on a commercial transaction. Noak also argues that the contract prong of I.C. § 12-120(3) cannot support a fee award because he did not expressly allege a contractual relationship. Noak further argues that even if IDOC was entitled to fees, the court's award is unreasonable.

Idaho Code § 12-120(3) provides for an award of reasonable attorney fees "in any civil action to recover . . . on [a] contract relating to . . . services." "Where a party alleges the existence of a contractual relationship of a type embraced by I.C. § 12-120(3), that claim triggers the application of the statute, and the prevailing party may recover fees even though no liability under a contract was established." *Huyett v. Idaho State Univ.*, 140 Idaho 904, 911, 104 P.3d 946, 953 (2004). The district court has discretion to calculate reasonable attorney fees in such cases. *Lettunich v. Lettunich*, 145 Idaho 746, 749, 185 P.3d 258, 262 (2008). When it awards fees, the district court must consider the factors listed in I.R.C.P. 54(e)(3), and it may consider any other factors it deems appropriate. *Id.* at 749–50, 185 P.3d at 262–63. "The court need not specifically address each of the [I.R.C.P. 54(e)(3)] factors, as long as the record indicates that it considered them all." *In re Univ. Place/Idaho Water Ctr.*, 146 Idaho 527, 544, 199 P.3d 102, 119 (2008).

11

In this case, Noak alleged a breach of the covenant of good faith and fair dealing, which sounds in contract. The complaint asserted that the covenant was implied into the employment agreement between Noak and PHS and that by virtue of that agreement the covenant was binding upon IDOC. Noak thus sought to recover against IDOC based on a contract relating to services. Such allegations triggered application of the contract prong of I.C. § 12-120(3). Noak misunderstands the essence of his claim, which he characterizes as something other than a contract claim, but that does not change the fact that Noak alleged a cause of action based upon a contract (even though he was not a party to that contract). Accordingly, IDOC, as the prevailing party, may recover fees. The district court so concluded and, in awarding fees, expressly considered I.R.C.P. 54(e)(3). We therefore affirm the district court's fee award.

Before this Court, IDOC was again forced to defend against Noak's argument that IDOC breached the alleged covenant of good faith and fair dealing. So, again, Noak triggered application of I.C. § 12-120(3). We therefore award fees on appeal with respect to the covenant of good faith claim.

### III.
### CONCLUSION

We affirm the district court's grant of summary judgment to IDOC and Haas, and we affirm the district court's fee award to IDOC. We award fees on appeal to IDOC for the contract claim and costs to IDOC and Haas.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.