

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2006

# Woodham v. Sayre Bor Pol Dept

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4212

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Woodham v. Sayre Bor Pol Dept" (2006). *2006 Decisions*. Paper 1083.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1083

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-4212

JAMES C. WOODHAM,
Appellant

v.

SAYRE BOROUGH POLICE DEPARTMENT;
SAYRE BOROUGH; DAN REYNOLDS, Sayre
Borough Police Department

On appeal From the United States District Court
For the Middle District of Pennsylvania
(M.D. Pa. Civ. No. 02-cv-01951)
District Judge: Honorable Malcolm Muir

Submitted Under Third Circuit LAR 34.1(a)
March 3, 2006

Before: McKEE, FUENTES and NYGAARD, Circuit Judges

(Filed: May 19, 2006 )

OPINION OF THE COURT

PER CURIAM

James C. Woodham filed this civil rights suit pro se pursuant to 42 U.S.C. § 1983,

1

alleging that Sayre Borough Police Sergeant Dan Reynolds violated his constitutional rights.[1] Woodham was arrested in his home in 2002 by a task force composed of local and state law enforcement officers, including Sergeant Reynolds. Woodham claims that after he had been taken to jail, Reynolds broke down the back door of his house and allowed Woodham's ex-girlfriend, Lorraine Pearsall, to enter the residence and remove nearly all of his personal property, in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. The Magistrate Judge determined that Woodham's claim against Reynolds was supported by sufficient evidence to withstand Reynolds's motion for summary judgment and recommended that the case proceed to trial. The District Court adopted this recommendation and set the case for trial before a jury.

At the same time he filed his complaint, Woodham filed motions in the District Court seeking permission to proceed in forma pauperis and for the appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1). The Magistrate Judge granted Woodham's motion to proceed in forma pauperis but denied his counsel motion without prejudice to its renewal later in the proceedings. Woodham subsequently renewed his counsel motion seven times, and each request was denied. Consequently, Woodham, who was incarcerated throughout the litigation, represented himself up to and during trial.

---

[1]Woodham also named Sayre Borough and its police department in his complaint; however, all claims against these two defendants were dismissed early in the proceedings.

Woodham lost his case before the jury, and his motion for a new trial was denied by the District Court. Woodham filed this timely appeal, again proceeding pro se.

Woodham argues that the District Court erred in denying his eight motions for the appointment of counsel, as well as his motions for a continuance, to amend the complaint, and for a new trial. With the exception of the motion to amend the complaint, we hold that Woodham's motions should have been granted by the District Court. Accordingly, we will vacate the judgment, reverse the denial of these motions, and remand.

**Motions for the appointment of counsel**

Although an indigent civil litigant has neither a constitutional nor a statutory right to counsel, 28 U.S.C. § 1915(e)(1) provides that a "court may request an attorney to represent any person unable to afford counsel." Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). As appointment of counsel is discretionary, we review the District Court's decision to deny counsel for abuse of discretion. See id. (internal citation omitted).

Our review is guided by the familiar framework set forth in Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993), which first requires a court to consider the threshold question of whether the litigant's case has arguable merit in fact or law. After this criterion is met, a court should consider the following factors: (1) the plaintiff's ability to present his case; (2) the difficulty of the legal issues; (3) the degree to which factual investigation will be necessary and the plaintiff's ability to pursue such investigation; (4)

3

the plaintiff's ability to retain counsel on his own; (5) the extent to which the case is likely to turn on credibility determinations; and (6) whether the case will require expert testimony. Id. at 155-57.

In Woodham's case, the threshold issue of arguable merit is presumptively established, as the claim against Reynolds survived summary judgment and the case proceeded to trial. Therefore, we must determine the extent to which the six Tabron factors are present.

**Tabron factors 1 and 2: The Plaintiff's ability to present his case and the difficulty of the legal issues.**

In considering a plaintiff's ability to present his case, a court should consider the plaintiff's education, literacy, prior work experience, prior litigation experience, the plaintiff's ability to understand English, and the plaintiff's restraints due to confinement. Montgomery v. Pinchak, 294 F.3d 492, 501 (3d Cir. 2002). Knowledge of trial procedure and evidentiary rules are key factors in a successful presentation. See Parham, 126 F.3d at 459. Complexity of the legal issues - factor two - must be considered in conjunction with the plaintiff's ability to present his case. See Montgomery, 294 F.3d at 502.

Throughout his counsel motions, Woodham asserted that his limited education, lack of litigation experience, and incarceration all severely hampered his ability to present his case. Woodham asserted that he had a "5.9 grade reading skill level" and attached documentation to that effect from the prison's education staff. He claimed that he lacked

knowledge of discovery procedures (such as filing interrogatories and taking depositions) and had difficulty "articulating well enough for his sobpoena's [sic] to be issued." Woodham emphasized that he had no experience in trial advocacy or presentation of evidence, could not adequately present his voir dire questions, and did not know how to respond to objections raised by opposing counsel. Woodham also asserted that he lacked experience questioning witnesses, especially hostile witnesses, which he was certain to encounter during this particular trial.

Despite Woodham's extensive descriptions of his incompetence as a litigator, the District Court determined that Woodham's case was not particularly complicated and that he had shown that he was able to litigate it on his own. The District Court's perception of Woodham's ability appears to have been based on his persistence in filing counsel motions and other pleadings. However, a plaintiff's ability to file and respond to motions does not translate to an ability to present his own case. See Parham, 126 F.3d at 459. Indeed, as Woodham aptly put it, "[the] filing of papers is one thing and presenting a case in court is quite another." See Eighth Counsel Motion, filed August 11, 2004, at 2. Given his limited education and literacy, lack of litigation experience (of heightened importance since his case would be tried before a jury), and incarceration, we find that Woodham's circumstances fulfill Tabron's first two factors.

**Tabron factor 3: The Plaintiff's ability to pursue necessary factual investigation.**

5

A court should consider a prisoner-litigant's inability to gather facts relevant to the proof of his claim and should be sensitive to his discovery difficulties. Montgomery, 294 F.3d at 503-04 (citing Tabron, 6 F.3d at 156). Woodham conducted all of his litigation while incarcerated and, therefore, had limited ability to investigate the facts supporting his claim, all of which occurred outside the prison and outside of his presence. Without counsel, Woodham was unable to depose Reynolds or any other potential witnesses, including four individuals who submitted sworn statements that they saw Reynolds on or near Woodham's property during Pearsall's raid.

While the bulk of Woodham's discovery problems may have stemmed from limitations imposed by his incarceration, he also had difficulties dealing with opposing counsel. In one example, on July 1, 2003, Woodham wrote to the District Court to complain that opposing counsel had deposed him at the prison without providing any advance notice, as required by Federal Rule of Civil Procedure 30(b). See also Fed. R. Civ. P. 30(a)(2) (requiring a party to seek leave from the court to depose a prisoner). The Magistrate Judge's law clerk responded by informing Woodham that no action would be taken on his letter, because the letter did not comply with the Federal Rules. Woodham's letter should have been liberally construed, however. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (pro se litigants' pleadings should be held to a less stringent standard than pleadings from attorneys). Woodham later moved for an extension of the discovery period because Defendants had not provided him with the transcripts of his June 26,

6

2003, deposition until August 21, 2003 – over one month after the discovery deadline had expired. The Magistrate Judge denied Woodham's motion without any explanation. On appeal, Reynolds argues that Woodham's discovery difficulties were his own fault and that, therefore, he was not prejudiced by the court's refusal to appoint counsel. We agree that Woodham's attempts to conduct discovery were woefully ineffective. However, this fact weighs in favor of, not against, the appointment of counsel. See Montgomery, 294 F.3d at 503-04.

**Tabron factor 4: The Plaintiff's ability to retain counsel.**

As with the arguable merit threshold, this factor is presumptively fulfilled, because Woodham was granted permission from the District Court to proceed in forma pauperis.

**Tabron factor 5: The extent to which the case is likely to turn on credibility determinations.**

If it appears that the case will be "solely a swearing contest" and will rely heavily on credibility determinations, this should weigh in favor of appointing counsel. Parham, 126 F.3d at 460; Tabron, 6 F.3d at 156. In his fifth counsel motion, Woodham argued that counsel should be appointed because his case hinged on the jury's assessment of both his and Reynolds's credibility. In support, Woodham cited to Maclin v. Freake, 650 F.2d 885 (7th Cir. 1981) (per curiam) and Hodge v. Police Officers, 802 F.2d 58 (2d Cir. 1986). The District Court rejected Woodham's arguments, stating that its consideration of counsel motions is governed by Tabron v. Grace and that Woodham had not met the

7

criteria set forth in Tabron.  As credibility determinations constitute a distinct Tabron factor and as Tabron's discussion of this factor cited to both Maclin and Hodge, we find the District Court's statement to be error.  Given that credibility determinations were paramount in Woodham's case, Tabron's fifth factor is clearly present.

**Tabron factor 6: The need for expert testimony.**

This factor is not implicated, as there is nothing in the record indicating the need for expert testimony in this case.

As Woodham's case had arguable merit, was set for trial, and presented most of the Tabron factors, the District Court should have appointed counsel for Woodham.  See Parham, 126 F.3d at 461.  We recognize that this may not have been apparent when Woodham filed his first two counsel motions.  However, after the case had been set for trial and Woodham's discovery problems became evident, the District Court had several more opportunities and ample reason to grant Woodham's motion.  Under the circumstances, the District Court's repeated denials of Woodham's motions were not consistent with the sound exercise of discretion.

**Motion for a continuance**

Continuance of trial is a matter of discretion with the trial court and will not be disturbed unless a clear abuse of discretion has been shown.  Fontana v. United Bonding Ins. Co., 468 F.2d 168, 169-70 (3d Cir. 1972) (per curiam).  An unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay is an abuse of

8

discretion.  <u>Amarin Plastics, Inc. v. Maryland Cup Corp.</u>, 946 F.2d 147, 151 (1st Cir.

1991).

On the day of trial, Woodham orally moved for a continuance in order to subpoena

three potential witnesses whose identities he had just discovered from a police dispatch

report.  Woodham had subpoenaed police records from Sayre Borough Police Chief

Kevin Guinane.  The District Court granted Woodham's motion to compel, in part, and

ordered Guinane to provide Woodham with a copy of relevant police records either on or

before the first day of trial.  Woodham claims that, although he received the subpoenaed

documents on the day jury selection took place, he did not receive them at the courthouse

during jury selection and was, therefore, unable to request the District Court to issue

subpoenas for the potential witnesses while he was at the courthouse.[2]  Once back at the

prison, the timing restrictions for outgoing inmate mail, combined with the upcoming

Labor Day holiday, effectively prevented Woodham from filing a motion requesting

subpoenas, or a continuance, any earlier than the morning of the trial itself.  The

transcripts of the pre-trial hearing on Woodham's continuance motion show that

Woodham's attempt to explain this was disastrous.

During the brief hearing, Woodham fumbled as he attempted to explain to the

---

[2]Woodham's only viable method of having subpoenas issued for these witnesses
was pursuant to 28 U.S.C. § 1915(d), which requires "officers of the court" to serve
process and issue subpoenas for witnesses in cases brought by litigants proceeding <u>in</u>
<u>forma</u> <u>pauperis</u>.

District Judge that he needed a continuance in order to subpoena several police officer witnesses whose identities he had only recently discovered and, further, that he had only recently discovered their identities because the police dispatch report was delivered to him at such a late date. When questioned by the District Judge, Woodham became increasingly tongue-tied as he tried to respond, until the District Judge asked opposing counsel for an explanation of the basis for Woodham's motion. Opposing counsel replied that it appeared that Woodham was seeking to amend his complaint "again" by reinstating his claim against the police department. See Hearing Trn. at 3. At this point, Woodham's argument for a continuance was supplanted by opposing counsel's suggestion that Woodham was attempting to amend his complaint at the last minute.[3] Noting that it was "24 seconds before 10:00," the District Court ended the hearing by denying the motion to amend and ordering the trial to begin. The transcript makes it clear that, in this three-minute hearing, Woodham was unable to focus the District Court's attention on his continuance motion, much less make a coherent supporting argument.

Woodham argues that the police dispatch report constitutes "overwhelming proof" of his claim. While we disagree with this characterization, our review indicates that the information contained in the report was highly relevant and may well have led to the discovery of relevant, admissible evidence. The report, which was generated when

---

[3]Woodham did file a written motion to amend his complaint that morning. However, it is clear from the transcript that obtaining a continuance was his primary goal.

10

Woodham's sister and mother called the police dispatcher from Woodham's residence, states that Pearsall had been told by two police officers that she could remove property from Woodham's house. Although the identity of the officers who allegedly gave this permission is not provided, police officers Burlingame and Keir are identified as having confirmed that the permission was given. Importantly, the report also states that Woodham's sister and mother called the police because, when they arrived at Woodham's house, they discovered that Lorraine Pearsall "had taken the good things by this point." See Informal Brief, Exhibit 2b. There is no mechanical test for evaluating a court's decision to deny a continuance; rather, such an evaluation "must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Ungar v. Sarafite, 376 U.S. 575, 589-90 (1964). In light of the circumstances surrounding Woodham's receipt of the dispatch report and its apparent relevance to his claim, we hold that the District Court's denial of Woodham's request for a continuance was an abuse of discretion.

**Motion to amend the complaint**

In his pre-trial motion to amend his complaint, Woodham sought to reinstate the Sayre Borough Police Department as a defendant, based solely on the information in the police dispatch report. As that information does not support reinstatement of the police department, we find no abuse of discretion in the District Court's denial of this motion. See Lewis v. Curtis, 671 F.2d 779, 783 (3d Cir. 1982).

11

**Motion for a new trial**

We review the District Court's ruling on the motion for a new trial for abuse of discretion. See Brennan v. Norton, 350 F.3d 399, 430 (3d Cir. 2003). A new trial should only be granted when the error or defect complained of affects the substantial rights of the parties. See Fed. R. Civ. P. 61; Brennan, 350 F.3d at 430 (new trial should not be granted unless the verdict is contrary to the weight of the evidence or when a miscarriage of justice would result if the verdict were to stand).

Woodham's motion for a new trial focused on the denial of his counsel and continuance motions. The District Court rejected Woodham's arguments, holding that his "eleventh-hour request" for a continuance had been properly denied. The District Court also held that Woodham had failed to identify what information from the police dispatch report would have been useful to him. We conclude, however, that Woodham's motion for a new trial both sufficiently describes the information contained in the dispatch report and explains that the untimely delivery of the report prevented him from filing his continuance motion any sooner. Because the District Court's denial of Woodham's counsel motions and continuance motion constituted trial errors which affected Woodham's substantial rights, his motion for a new trial should have been granted. See Fed. R. Civ. P. 61; Citron v. Aro Corp., 377 F.2d 750, 753 (3d Cir. 1967).

For the foregoing reasons, we will vacate the judgment entered by the District Court; reverse its denials of Woodham's motions for counsel, for a continuance, and for a

12

new trial; and remand to the District Court with instructions that it appoint counsel for Woodham and hold a new trial.