

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-5-2007

# Woodham v. Dubas

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2327

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Woodham v. Dubas" (2007). *2007 Decisions*. Paper 138.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/138

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2327
_____

JAMES C. WOODHAM,

Appellant

v.

DONNA M. DUBAS
_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 03-cv-00664)
District Judge: Honorable Malcolm Muir
_____

Submitted Under Third Circuit LAR 34.1(a)
April 2, 2007

Before:   BARRY, CHAGARES, AND ROTH, <u>Circuit Judges</u>

(Filed: December 5, 2007)
_____

OPINION
_____

PER CURIAM

     James C. Woodham, proceeding <u>pro se</u>, sued Donnamarie[1] Dubas.  In his second

amended complaint, he alleged that Dubas, a police officer, violated his right to due

---

[1]Appellee is listed as Donna M. Dubas in the caption of this case.  However, at trial, she stated that her first name is Donnamarie.  (Trial Transcript 79.)

process of law when she gave false statements related to the sale of methamphetamine in February and March of 2002 to support a search warrant. He also claimed that Dubas, with Woodham's ex-girlfriend, Lorraine Pearsal, illegally entered his home without a warrant on February 5, 2002, February 19, 2002, and February 26, 2002. He sought declarations that Dubas deprived him of due process and trespassed. He also sought compensatory and punitive damages for the alleged violations of his constitutional rights.

Dubas moved for summary judgment, which the District Court granted in part and denied in part on March 8, 2005, after Woodham responded with a counter-statement of facts and numerous exhibits, and the Magistrate Judge filed a report and recommendation, and the parties filed cross-objections and responses to the report and recommendation. From the parties' submissions, the District Court put Woodham's allegations in context. (Supp. App. 4-7.) As the parties are familiar with the underlying facts, we will not tarry with them. We will, however, summarize the background of this case.

Pearsal notified the Bradford County Drug Task Force ("Task Force") that Woodham was making methamphetamine and selling it from his home. Dubas, an undercover agent for the Task Force, went with Pearsal on February 5, 19, and 26, 2002, and went alone twice in March, to buy drugs from Woodham at his home. On February 5, 2002, no one was at the home; on February 19, 2002, Woodham's sister was there and sold them drugs, and later in the same day, Woodham was there and sold them drugs. On the later date in February and on the two days noted in March, Dubas again purchased methamphetamine from Woodham at his home. Based on Dubas's controlled drug buys,

2

police obtained a search warrant and searched Woodham's home on April 3, 2002. As a result of the undercover investigation and search, police charged Woodham with four counts of possession of a controlled substance, four counts of possession with intent to deliver, and one count of conspiracy. A jury found Woodham guilty of possession charges relating to the March controlled buys and possession and possession with intent to deliver charges relating to the April 3, 2002 search. Woodham won acquittals on the remaining charges.

To the extent that Woodham raised a challenge to his convictions, the District Court held that his claims were barred by Heck v. Humphrey, 512 U.S. 477 (1994), and dismissed Woodham's due process claim. The District Court also concluded that Woodham's claims of trespass under Pennsylvania law were barred by the doctrine of sovereign immunity. The District Court defined the claims that remained for trial as whether Dubas unlawfully entered Woodham's residence and whether any such entry violated Woodham's Fourth Amendment rights.

After the District Court ruled on Dubas's motion for summary judgment, Woodham filed a motion for appointment of counsel. The District Court denied Woodham's motion on June 10, 2005. Woodham subsequently filed another motion for appointment of counsel and a motion for appointment of "stand-by counsel," which the District Court also denied.

Before trial, Dubas filed a motion in limine. Among other things, she sought to

bar the introduction of evidence that she was drunk when she was at Woodham's home. On April 4, 2006, the District Court granted Dubas's motion as it related to evidence of intoxication, apparently accepting Dubas's argument that the probative value of such evidence was outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

Woodham tried his case before a jury on April 10, 2006. The jury entered a special verdict, finding that Dubas did not enter Woodham's house without permission on February 5, 2002, February 19, 2002, or February 26, 2002. The finding as to the first date was unanimous; the findings related to the other dates won the agreement of ten jurors (a number stipulated to be sufficient for a verdict (Trial Transcript 105-08)).

Woodham appeals. In his brief, he states that he appeals from the orders of March 8, 2005 (granting, in part, Dubas's motion for summary judgment), June 10, 2005 (denying Woodham's motion for appointment of counsel), and April 4, 2006 (granting, in part, Dubas's motion in limine). In listing his issues on appeal, Woodham explains that he objects to the aspect of the March order that granted judgment in Dubas's favor on the due process claim, arguing that he provided evidence from his criminal trial and preliminary hearing that Dubas supplied false statements to meet the probable cause requirement. He contends that the District Court erred in denying his motions for appointment of counsel because he struggled to articulate questions and present his case. He additionally claims that he should have been permitted to introduce intoxication evidence because it "goes directly to the Appellee's state of mind and is an essential

element of the constitutional violation." (Appellant's brief 2.) The bulk of Woodham's brief is devoted to why the District Court should have appointed him counsel.

## A. Appointment of Counsel

We consider first the matter of greatest concern to Woodham. We must determine whether the District Court's decision not to appoint counsel was "clearly an abuse of discretion." Tabron v. Grace, 6 F.3d 147, 155 n.4 (3d Cir. 1993). To decide whether to appoint counsel, a court must, as a threshold manner, determine whether a claim has arguable merit in fact and law. See Tabron, 6 F.3d at 155. If a claim has some merit, then a court must evaluate additional factors, including the litigant's ability to present the case, based on the litigant's education, literacy, prior work experience, and prior litigation experience, and the litigant's ability to understand English. See id. at 156. A court also must then consider the complexity of the legal issues in the case, the degree to which factual investigation will be necessary (and the litigant's ability to pursue such investigation), the likelihood that the case will turn on credibility determinations or expert testimony, and litigant's ability to retain counsel. See id. at 156-57.

Woodham has no difficulty meeting the threshold issue of arguable merit, as some of his claims survived summary judgment (and some of his claims garnered the support of two jurors). Accordingly, we will go on to consider the other Tabron factors.

Although we have worried about Woodham's legal ability in the past, see Woodham v. Sayre Borough Police Dep't, 119 F. App'x 111, 115 (3d Cir. 2006), in the counsel motions he filed in this case, Woodham did not present evidence that he

struggles under a particular illiteracy that would impede his ability to put on his case, and his submissions generally do not suggest any such thing. While we are mindful that an ability to file and respond to motions does not establish an ability to present a case, see Parham v. Johnson, 126 F.3d 454, 459 (3d Cir. 1997), a review of the trial transcript in this case reveals that Woodham was not incompetent in trying his claims. Woodham, who remained relatively well-composed at trial, succeeded at convincing some members of the jury of the merit of his claims.

Although Woodham faced some of the difficulties attendant in litigating a lawsuit from a prison cell, the relatively straightforward nature of his claims and the ready availability of some evidence attenuates our concern about how Woodham could develop his case. We ordinarily judge the complexity of a case by looking at the ultimate issue presented, the proof going towards it, and the discovery issues involved. Parham, 126 F.3d at 459. In this case, our consideration of the discovery issues is truncated, as Woodham did not request counsel until after the close of discovery and after the District Court had ruled on Dubas's summary judgment motion. The issues that then remained turned on whether Dubas entered Woodham's home without permission. As such, the triable issues were not particularly complex. Woodham did not face the hurdles of presenting a medical malpractice case involving complex facts and medical records that the plaintiff in Parham did, see 126 F.3d at 460, or even all the difficulties he faced in proving events that occurred outside his presence in his earlier, and more complicated, case, see Woodham, 191 F. App'x at 115. Woodham witnessed some of the events at

6

issue in this matter. Furthermore, without counsel, Woodham put together some evidence of an illegal entry using an investigative report and other documents from his criminal proceeding. As the District Court noted, Woodham's criminal trial provided evidence for his civil suit.

As the District Court anticipated, credibility determinations played an important role at trial, so this factor weighed in favor of appointing counsel, as did Woodham's presumptive inability to obtain private counsel (he proceeded in forma pauperis). However, as the District Court also noted, there was no need for expert testimony at trial (unlike in Parham, see 126 F.3d at 460, where we noted the importance of this last factor).

Overall, although the question whether to appoint counsel was close, we conclude that the District Court did not abuse its discretion in denying Woodham's motions for appointment of counsel.

## B.    Summary Judgment

We next consider the District Court disposition of Dubas's motion for summary judgment, taking each of Woodham's claims in turn.

(1) Trespass Claim

The District Court erred in ruling that Dubas was entitled to summary judgment on the state law trespass claims based on a claim of sovereign immunity. Dubas did not establish that she was a Commonwealth employee entitled to immunity pursuant to 1 Pa. C.S. § 2310. She was not entitled to sovereign immunity merely because she was a local police officer. See Lancie v. Giles, 572 A.2d 827, 830 (Pa. Commw. Ct. 1990). Nor was

7

she entitled to summary judgment based on the document – labeled "Office of Attorney General - Bureau of Narcotics Investigation and Control" and "Municipal Police Roster Form" – that she submitted with her motion.

The District Court recognized that what Dubas had offered did not determine the issue, and looked elsewhere in the record. The District Court found testimony from Woodham's criminal trial that suggested that Dubas was paid through the Pennsylvania Attorney General's Office in addition to serving on the local police force and as an undercover officer for the township. (Supp. App. 044, reprinting testimony found at "Exhibit J" in support of Woodham's statement of material facts, "Main Document" (doc. 76-1) at 50.) Even though Dubas bore the burden to prove her defense, the District Court did not err in evaluating other evidence in the record. Sovereign immunity is a limitation on federal court jurisdiction, see Raygor v. Regents of the Univ. of Minn., 534 U.S. 533, 541 (2002), and a federal court has an obligation to evaluate its jurisdiction. However, the statement the District Court relied on is ambiguous. Even in combination with the document proffered by Dubas, whether Dubas was a Commonwealth employee remained a genuine issue of material fact.

Nonetheless, the jury's verdict precludes success on the trespass claims. In Pennsylvania, the common law tort of trespass tracks the Restatement of Torts. See Kopka v. Bell Tel. Co., 91 A.2d 232, 235-36 (Pa. 1952). One who enters the property of another without the privilege to do so trespasses. See id. at 235. Woodham's trespass claim is based on Dubas's entry into his home on dates in February and March.

8

(Complaint 2.)  The jury found that Dubas did not enter Woodham's home without permission on the days in question.  (Verdict 2-4.)  Accordingly, the order dismissing Woodham's trespass claims will be affirmed on other grounds.  See Erie Telecomms. v. Erie, 853 F.2d 1084, 1089 (3d Cir. 1988) (holding that the Court may affirm on an alternative basis supported by the record).

(2) Due Process Claim

In his complaint, Woodham presented his due process claim as follows:

> On February 19, 2002, February 26, 2002, March 15, 2002, and March 19, 2002, the Defendant gave false statements to Pennsylvania's B.N.I. that the Plaintiff sold her methanphetamine [sic] whose false statements were used as evidence to obtain a search warrant depriving the Plaintiff [of] due process of law.

(Complaint 2.)  He requested a declaration that the procedures employed by Dubas on the dates in question "in giving false statements to B.N.I. Deprive the Plaintiff [of] due process in his criminal case No's [sic] 02-CR-000251 and 02-CR-000264.  (Id. 3.)  (He also sought compensatory and punitive damages.)

Dubas argued that Woodham's due process claim was Heck-barred.[2]  The District Court agreed and dismissed the claim.  The District Court was correct.  To the extent that Woodham raised a challenge to his convictions, Woodham's claims were clearly Heck-barred.  Certainly, his requested relief – a declaration that Dubas's false statements

---

[2]In fact, Dubas argued that all the constitutional claims were Heck-barred.

deprived him of due process in his criminal proceedings – would imply the invalidity of his criminal convictions.

Woodham's allegations may encompass a false arrest claim, which the District Court did not explicitly address. Under some circumstances, a false arrest claim may proceed in an action under 42 U.S.C. § 1983 despite a valid conviction. See, e.g., Simpson v. Rowan, 73 F.3d 134, 136 (7th Cir. 1995) (holding that claims relating to an improper arrest are not barred by Heck when they do not undermine the validity of a conviction). However, success on the improper arrest claim in this case would compromise the validity of Woodham's convictions. A litigant who challenges the validity of a search warrant on the basis that a law enforcement agent submitted a false statement must satisfy the two-part test of Franks v. Delaware, 438 U.S. 154, 155-56 (1978). See Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). A plaintiff must prove by a preponderance that the agent knowingly and deliberately, or with reckless disregard for the truth, made false statements in applying for a warrant, and that the statements were material or necessary to the probable cause finding. See id. The statements that Woodham would have to prove as false are those that Dubas testified about at Woodham's criminal prosecution, including the specifics of her drug purchases from Woodham. (Motion for Summary Judgment, Ex. J (search warrant); "Exhibit J" in support of Woodham's statement of material facts, "Main Document" (doc. 76-1) at 34-38 (opening statement that includes a description of Dubas's expected testimony); Exhibit in support of Woodham's objections to the report & recommendation (doc. 85) at 13-41

10

(Dubas's testimony in Woodham's criminal prosecution).)

Furthermore, although a jury acquitted Woodham of some charges at trial, the charges were so interrelated that the jury considered the cases of 02-CR-000251 and 02-CR-000264 at the same time. However, even if a false arrest claim is not Heck-barred to some extent, Woodham, despite his assertions, did not present evidence that Dubas knowingly or willingly, or with reckless disregard for the truth, made false statements in applying for a warrant.[3] Furthermore, another officer, not Dubas, actually applied for the warrant, (Motion for Summary Judgment, Ex. J) (and there is no evidence that he (a non-party) knowingly or recklessly incorporated false statements into it).

## C.    The Motion In Limine

The District Court's evidentiary ruling is reviewed for abuse of discretion, and reversed only if it is arbitrary or irrational. See United States v. Williams, 458 F.3d 312, 315 (3d Cir. 2006). The District Court's decision to preclude the introduction of evidence that Dubas was intoxicated while in Woodham's home was not arbitrary or irrational. Relevant issues were whether Dubas entered Woodham's home and whether Dubas had an *objectively*, cf. Brigham City v. Stuart, 126 S. Ct. 1943, 1948 (2006), reasonable belief that she had permission to do so. Evidence that Dubas was drunk while at Woodham's house was not particularly relevant, and it could have potentially prejudiced or confused the jury. Accordingly, the District Court did not err in granting in part the motion

---

[3]The Magistrate Judge, who believed that the false arrest claim was not Heck-barred, recommended that Dubas be granted summary judgment on this basis.

11

in limine.

In conclusion, for the reasons set forth above, the District Court's judgment will be affirmed.