FILED
United States Court of Appeals
Tenth Circuit

**July 15, 2013**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

THOMAS TRENT PETTIGREW,

    Plaintiff - Appellee,

v.

STATE OF OKLAHOMA, ex rel.,
THE OKLAHOMA DEPARTMENT
OF PUBLIC SAFETY, a statutory
state agency,

    Defendant - Appellant.

No. 12-6113

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA
### (D.C. NO. 5:12-CV-00116-L)

---

Kevin L. McClure, Assistant Attorney General, Oklahoma Attorney General's
Office, Oklahoma City, Oklahoma, for Defendant - Appellant.

Scott F. Brockman (Stanley M. Ward and Barrett T. Bowers, with him on the
brief), Ward and Glass, L.L.P., Norman, Oklahoma, for Plaintiff - Appellee.

---

Before **HARTZ**, **MCKAY**, and **O'BRIEN**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

This appeal presents only one issue for consideration: whether a settlement agreement between Thomas Trent Pettigrew and the Oklahoma Department of Public Safety (DPS) waived the state's "Eleventh Amendment" right not to be sued in federal court. Although the language of the agreement is not explicit, the agreement's reference to bringing suit in federal court has no reasonable construction except as a waiver. We therefore hold that there was a waiver and affirm the district court.

## I.    BACKGROUND

In 2009 Pettigrew applied to DPS for a promotion to one of two open positions of Field Major in the Oklahoma Highway Patrol. DPS denied the promotion to Pettigrew, who is white, and instead promoted an African-American and a man who, according to Pettigrew, was a friend of the DPS commissioner but was unqualified for the position. In April and June 2009 Pettigrew filed administrative grievances with DPS, complaining that the "Black Caucus" had pressured the commissioner to promote an African-American officer and that he had been denied the promotion because of his race. Aplt. App., Vol. I at 22. In October 2009 DPS placed Pettigrew on administrative leave for the stated reason that he was being investigated for potential media leaks concerning an unrelated sexual-harassment complaint against DPS.

Pettigrew filed suit against DPS in February 2010 in the United States District Court for the Western District of Oklahoma. He alleged two claims: (1)

-2-

that DPS had violated Title VII of the 1964 Civil Rights Act by retaliating against him for filing the grievances; and (2) that DPS had negligently supervised, trained, and retained the employees—including the commissioner—who discriminated against him in the promotion process. The parties executed a "General Release and Settlement Agreement" (the Agreement) in December 2010. *Id.*, Vol. II at 73. Among the terms of the Agreement was that the administrative leave would be terminated and Pettigrew would return to work. One paragraph further provided that DPS would not retaliate against Pettigrew for pursuing the claims. And another paragraph (the Venue Provision) set forth, among other things, the appropriate venues for resolving disputes concerning the Agreement:

> The laws of the State of Oklahoma shall govern interpretation of this Agreement. In the event that any litigation is commenced by either party to enforce the terms and conditions of the Agreement, the *litigation will be brought in the appropriate Oklahoma court having jurisdiction, either state or federal*, and the losing party shall pay to the prevailing party all reasonable attorneys' fees and costs incurred by the prevailing party defending against the claim(s). However, prior to either party filing an action to enforce any of the terms of the Agreement, the party alleging a breach of the Agreement will first provide notice of the alleged breach to the alleged offending party, and provide that party thirty (30) days to reasonably cure the breach to the satisfaction of the party alleging a breach. If the alleged breach is not cured to the satisfaction of the party alleging a breach within the allotted 30 days, the party alleging the breach may file an action in the appropriate court with jurisdiction over the matter.

*Id.* at 76 (emphasis added).

On January 31, 2012, Pettigrew filed a second suit against DPS in the same federal court. He alleged that after he returned to work he received two formal

letters of reprimand relating to his workplace conduct and interactions with other employees, and he asserted that in issuing the letters DPS had employed unprecedented procedures that violated written DPS policies. He further asserted that the formal discipline was designed to disqualify him from future promotions in retaliation for his pursuing the earlier discrimination claim. The complaint alleged three claims: (1) that DPS had violated Title VII by retaliating against Pettigrew; (2) that the alleged retaliation had breached the Agreement; and (3) that he was entitled to a declaratory judgment that DPS had breached the Agreement.

The state moved to dismiss the second and third claims (which we shall call the "state-law claims"), arguing that they are barred by sovereign immunity under the Eleventh Amendment. Pettigrew responded that the district court could exercise supplemental jurisdiction over the state-law claims, *see* 28 U.S.C. § 1367(a), and that the reference to federal courts in the Venue Provision waived any Eleventh Amendment objection to federal jurisdiction. The court denied the motion.

The state filed a notice of appeal. Although the appeal is interlocutory (the suit has not proceeded to final judgment), we have jurisdiction under 28 U.S.C. § 1291. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (order denying motion to dismiss on ground of Eleventh Amendment immunity is a final decision appealable under the collateral-order doctrine).

-4-

## II.    DISCUSSION

"We review de novo the denial of a motion to dismiss based on Eleventh Amendment immunity." *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010).  The Eleventh Amendment states:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

Before addressing the matter on which the parties disagree, we note some common ground.   First, implicit in enactment of the Eleventh Amendment is that state sovereign immunity ordinarily bars federal-court jurisdiction over private suits against a state by citizens of the state.  *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–68 (1997) ("To respect the broader concept of immunity, implicit in the Constitution, which we have regarded the Eleventh Amendment as evidencing and exemplifying, we have extended a State's protection from suit to suits brought by the State's own citizens.").  The sole exceptions are (1) when Congress has abrogated the states' immunity, as in legislation enacted to enforce the Fourteenth Amendment; and (2) when a state waives its immunity.  *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669–70 (1999); *cf. Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356 (2006) (Constitution's Bankruptcy Clause authorizes limited subordination of state sovereign immunity).

Second, DPS is an arm of the State of Oklahoma and therefore is treated as the state for purposes of sovereign immunity and the Eleventh Amendment. *See Alden v. Maine*, 527 U.S. 706, 756 (1999) (sovereign immunity extends to an "arm of the State" but not to a "lesser entity" like a municipal corporation).

Third, the federal district court has jurisdiction over Pettigrew's claim under Title VII, which was enacted to enforce the Fourteenth Amendment. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456–57 (1976).

And fourth, absent the sovereign-immunity issue the supplemental-jurisdiction statute, 28 U.S.C. § 1367, would give the district court jurisdiction to hear Pettigrew's breach-of-contract and declaratory-judgment claims. Section 1367(a) provides that a federal court with original jurisdiction over one claim (such as a Title VII claim) may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "A claim is part of the same case or controversy if it derives from a common nucleus of operative fact." *Price v. Wolford*, 608 F.3d 698, 702–03 (10th Cir. 2010) (brackets and internal quotation marks omitted). That standard is satisfied here because Pettigrew premises his claims for breach of the Agreement and declaratory judgment on the same factual allegations as his Title VII claim.

The dispute before us arises because supplemental jurisdiction under § 1367 does not override the Eleventh Amendment's bar on suing a state in federal court. *See Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 541 (2002) ("[Section] 1367(a) [does not] authorize district courts to exercise jurisdiction over claims against nonconsenting States."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). Pettigrew does not suggest that any federal statute abrogates Oklahoma's sovereign immunity with respect to his state-law claims. Therefore, all we must resolve is whether the state waived its immunity.

Waiver of sovereign immunity must be knowing and voluntary, and the "test for determining whether a State has waived its immunity from federal jurisdiction is a stringent one." *Coll. Sav. Bank*, 527 U.S. at 675 (internal quotation marks omitted). The Supreme Court has found waiver when, for example, a state expressly consented by statute to suit in federal court, *see Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 308–09 (1990), and when it voluntarily invoked federal jurisdiction by filing suit in federal court, moving to intervene in federal-court litigation, or removing a case to federal court, *see Lapides v. Bd. of Regents*, 535 U.S. 613, 619–24 (2002). A state can likewise enter into a contract that waives its Eleventh Amendment immunity to suits related to the contract. *See, e.g., Watson v. Texas*, 261 F.3d 436, 442 (5th Cir. 2001) (settlement agreement waived state's immunity to suit by claimants to

-7-

recover settlement proceeds); *see also Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195, 1195 n.11 (10th Cir. 1998) ("Our conclusion [that the agreement at issue did not indicate the state's intent to waive immunity] does not foreclose the possibility that a State may demonstrate an unequivocal intent to waive Eleventh Amendment immunity by participating in a settlement.").  When a statute or other document purportedly waives a state's Eleventh Amendment immunity, we "will give effect to [the waiver] only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Feeney*, 495 U.S. at 305 (brackets and internal quotation marks omitted).

Pettigrew contends that the Venue Provision of the Agreement is such a waiver.  It states:  "In the event that any litigation is commenced by either party to enforce the terms and conditions of the Agreement, the litigation will be brought in the appropriate Oklahoma court having jurisdiction, *either state or federal . . . .*" Aplt. App., Vol. II at 76 (emphasis added).  Pettigrew argues that the specific reference to federal courts unequivocally indicates the state's intent to waive Eleventh Amendment immunity in suits to enforce the Agreement.

Pettigrew relies principally on *Feeney*, which interpreted similar language as constituting a waiver. *See* 495 U.S. at 306–09.  New York and New Jersey had entered into a compact creating the Port Authority of New York and New Jersey (the Port Authority). *See id.* at 301.  The states passed identical statutes

-8-

governing suits against the Port Authority. *See id.* at 302. A consent-to-suit section in the statutes "provided that the States 'consent to suits, actions or proceedings of any form or nature at law, in equity or otherwise against the [Port Authority].'" *Id.* at 302–03 (ellipsis omitted). And a venue section added, "'The foregoing consent . . . is granted upon the condition that venue in any suit, action or proceedings against the Port Authority shall be laid within a county or a judicial district, *established by [New York or New Jersey] or by the United States*, and situated wholly or partially within the Port of New York District.'" *Id.* at 303 (emphasis added). The Court was unwilling to find an Eleventh Amendment waiver in the consent-to-suit section, because "such a broadly framed provision may . . . reflect only a State's consent to suit in its own courts." *Id.* at 306. The venue provision, however, "suffice[d] to resolve any ambiguity contained in the States' general consent to suit provision by expressly indicating that the States' consent to suit extends to suit in federal court." *Id.* at 307. The Court rejected the notion that it should not look to a venue provision to elucidate the scope of the states' consent to suit. *See id.* at 307–08. And it emphasized the absence of any reasonable interpretation of the statutory language other than as a consent to suit in federal court. *See id.* at 308.

We agree with Pettigrew that *Feeney* is controlling. As in *Feeney*, the Venue Provision does not explicitly grant consent to be sued in federal court. In both cases any competent draftsman could have found much clearer language to

convey the thought.  But the Supreme Court in *Feeney* held that the venue section of the Port Authority statutes satisfied the requirement of "such overwhelming implication from the text as will leave no room for any other reasonable construction," *id.* at 305 (brackets and internal quotation marks omitted), simply because there would be no other reasonable purpose for the section to refer to federal courts.  Any alternative construction of the statutory provision would have rendered superfluous the federal-court language.  As *Feeney* summarized: "Petitioner essentially presents the choice between giving the venue provision its natural meaning and giving the provision no meaning at all.  Charged with giving effect to the statute, we do not find the choice to be a difficult one."  *Id.* at 308.

So here.  There is no question that the state consented to being sued under the Agreement, at least in state court.  Under Oklahoma law the state broadly consents to suit to enforce the terms of a contract entered into by the state.  *See State Bd. of Pub. Affairs v. Principal Funding Corp.*, 542 P.2d 503, 506 (Okla. 1975) ("We hold that where a person or entity enters into a valid contract with the proper State officials and a valid appropriation has been made therefor, the State has consented to being sued and waived its governmental immunity to the extent of its contractual obligations and such contractual obligations may be enforced against the State in an ordinary action at law.").  And the express terms of the Agreement reflect this rule; the final sentence of the Venue Provision provides that a party not satisfied that an alleged breach has been cured "may file an action

-10-

in the appropriate court."  Aplt. App., Vol. II at 76.  The only unsettled question would be whether the state could be sued in *federal* court for breach of the Agreement.  The Venue Provision answered that question with the words "the appropriate Oklahoma court having jurisdiction, *either state or federal*."  Aplt. App., Vol. II at 76 (emphasis added).

The state focuses on the word *appropriate* in the Venue Provision language allowing suit to be "brought in the appropriate Oklahoma court having jurisdiction, either state or federal."  *Id.*  Noting that Eleventh Amendment sovereign immunity protects states from suits in federal court, it insists that "[t]he only 'appropriate' Oklahoma court having jurisdiction over the state law claims in this case would be Oklahoma's state courts. . . ."[1]  Aplt. Reply Br. at 5 (emphasis omitted).  That is, it believes a court is "appropriate" only if the Eleventh Amendment poses no impediment to the court's jurisdiction, and therefore no federal court could be "appropriate."  The state is saying that even though the Venue Provision allows suits to enforce the Agreement to be "brought in the appropriate Oklahoma court having jurisdiction, either state or federal," the word *appropriate* voids the words *or federal*.

---

[1] The full sentence in the state's brief is:  "The only 'appropriate' Oklahoma court having jurisdiction over the state law claims in this case would be Oklahoma's state courts *since there is no diversity jurisdiction alleged by the parties*."  Aplt. Reply Br. at 5 (emphasis added and original emphasis omitted).  The emphasized language baffles us, because the clear language of the Eleventh Amendment rejects diversity jurisdiction in suits against states.

We disagree with this reading of the provision. No rational drafter would write such a sentence. In Oklahoma, contracts should be construed "'so as to give effect to every part, if reasonably practicable . . . .' Okla. Stat. tit. 15, § 157 (2011)." *Scungio v. Scungio*, 291 P.3d 616, 622 n.2 (Okla. 2012). Rejecting the state's interpretation is not a difficult choice. The language "or federal" clearly signals that the word *appropriate* must be read as not taking Eleventh Amendment immunity into account. The word refers only to proper subject-matter and personal jurisdiction and, perhaps, venue. Because a federal court can have supplemental jurisdiction over a state-law contract claim, *see* 28 U.S.C. § 1367(a), a federal court can be an appropriate court.

The state also points to another provision of the Agreement, which states, "This Agreement does not waive any rights or claims that [Pettigrew] or [the state] may have which arise after the date [Pettigrew] signs this Agreement . . . ." Aplt. App., Vol. II at 74. It argues that this provision reserved its right to invoke immunity because the right did not arise until this cause of action accrued, which occurred after Pettigrew signed the Agreement. We think it too much of a stretch to say that the state's sovereign immunity does not "arise" until a cause of action against the state accrues. But in any event, we still must avoid construing one provision of a contract as voiding the language of another provision. We cannot read this provision as overriding the Venue Provision.

One might argue (although the state does not) that the reference in the Venue Provision to "either state *or federal*" courts could be read merely as acknowledging that the Agreement could be enforced in federal court if the state's immunity were not an obstacle for some reason independent of anything in the Agreement. If that is the meaning, however, why include the language? True, the state could waive its Eleventh Amendment immunity by other means, such as by removing a suit to federal court. But we firmly doubt that the parties would include a provision allowing suit in federal court only if the state happened to prefer federal court at some point in the future. Why would the state need such a provision, and why would Pettigrew agree to such a one-sided rule? And the "state or federal" language would be pointless if it simply recited the venues where a suit could be brought anyway.

Moreover, the Port Authority could have offered the same interpretation for the statutory language in *Feeney* (that is, it could have argued that the language, "venue . . . shall be laid within a county or a judicial district, established by [New York or New Jersey] or by the United States," 495 U.S. at 303, simply allowed venue in federal court if a state consented to federal jurisdiction in a particular case). Yet none of the courts addressing the issue discussed this possible interpretation. Nor did anyone present to the Supreme Court any construction of the statutory language that the Court thought could reasonably give meaning to the reference to federal courts (other than as a waiver). *See id.* at 308 (there was

-13-

"no 'reasonable construction' that might be given to the venue provision's phrase, 'judicial district, established by the United States,' other than that the States consented to suit in federal court" (citation and ellipses omitted)); *id.* ("the phrase cannot reasonably be construed as an ineffectual attempt to limit venue for suits for which Congress has abrogated the States' immunity").  Accordingly, we hold that the Venue Provision waives Oklahoma's Eleventh Amendment immunity for suits to enforce the Agreement.

## III.  CONCLUSION

We AFFIRM the district court's denial of the state's motion to dismiss.