FILED
United States Court of Appeals
Tenth Circuit

April 2, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

BARRY D. TURNER, II,

          Plaintiff - Appellant,

v.

NATIONAL COUNCIL OF STATE
BOARDS OF NURSING, INC.,
a Pennsylvania corporation; STATE OF
KANSAS, by and through Kansas State
Board of Nursing; JEANE WALSH;
JANET JACOBS; BERNARD BECKER;
JANE CONROY; JANICE MCCART;
KIMBERLY HENSLEY; JUDITH
HINER; MARY CAROL POMATTO;
SERENA STUTZMAN; BRENDA
MOFFITT; GARY TAYLOR; MARY
BLUBAUGH,

          Defendants - Appellees.

No. 13-3088
(D.C. No. 2:11-CV-02059-KHV-JPO)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**BACHARACH**, Circuit Judge.

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Barry Turner applied to the Kansas State Board of Nursing ("Board") to take the state nursing licensing exam. He sought accommodations on the exam for his dyslexia, but ultimately took it without accommodations. Turner failed the exam and was therefore unable to obtain a license to practice nursing in Kansas.

Turner sued the Board and its members[1] (collectively, "State defendants"), as well as the National Council of State Boards of Nursing, Inc. ("Council"), which designs and administers the exam. He asserted claims under Titles II and III of the Americans with Disabilities Act ("ADA"). The district court dismissed all of Turner's claims, concluding that the State defendants were immune under the Eleventh Amendment, that the Ex Parte Young[2] exception to sovereign immunity did not apply to Turner's claims for declaratory and injunctive relief, and that Turner lacked standing to pursue his claims against the Council because he did not allege a causal connection between the Council's conduct and his injury. Turner appeals each of these rulings. We affirm.

**I**

The following facts are taken from Turner's amended complaint. The Board controls the issuance of all nursing licenses in Kansas. To obtain a license, a candidate must pass the NCLEX-RN licensing exam, which the Council develops and

---

[1] The issues on appeal concern only Turner's claims against the individual defendants in their official capacities. Turner does not dispute the district court's dismissal of his claims against these defendants in their individual capacities.

[2] 209 U.S. 123 (1908).

administers.  Since 1994, the Council has administered the exam in a computer adaptive testing ("CAT") format.  Turner alleges that "[s]ince the inception of the CAT format, academic research has revealed significant flaws with the format, including flaws that relate to those who suffer from test-[taking] anxiety for any reason."

Turner was diagnosed with dyslexia at a young age and suffers from its common side effect of test-taking anxiety.  Due to his dyslexia, Turner was given accommodations when taking examinations in school, including extra time, a private room, and someone to read the questions to him when necessary.  After receiving his college nursing degree, Turner contacted the Board in April 2008 to ask about taking the NCLEX-RN licensing exam with these accommodations.  He spoke with Gary Taylor, who said he would take care of Turner's request if Turner provided: (1) proof through school records that he suffered from dyslexia; (2) confirmation from his college that it had given him the same exam accommodations he now sought; and (3) a letter stating the specific accommodations requested.  Taylor told Turner he would let him know when to submit these materials.

In November 2008, Turner applied to the Board to take the licensing exam in May 2009.  The application form did not provide a place to indicate the need for, or to request the provision of, accommodations.  Turner contacted Taylor in late February 2009 to inquire about submitting the materials Taylor had requested.  Taylor advised Turner that if he took the exam with accommodations and passed it,

the license he received would be "restricted and limited." When Turner tried to contact Taylor again in March, he was told that Taylor no longer worked for the Board. Turner was advised that the Board did not know anything about his request for accommodations, but that Taylor had left a note stating that Turner planned to take the exam in May. Turner does not allege that he ever submitted to the Board the materials that Taylor told him were necessary to obtain accommodations for the exam.

When Turner took the licensing exam in May, he did so without any accommodations and failed it. Notably, Turner does not allege that his dyslexia, or resulting test-taking anxiety, either caused or contributed to his failure. He does allege, however, that there was a problem with the administration of his specific test. The CAT format requires that each person taking the test answer at least seventy-five questions, but the program inexplicably shut down after Turner had answered only fifty-seven questions. The test results Turner later received from the Council erroneously stated that he had answered eighty-four questions. After failing the exam, Turner contacted both the Board and the Council to see if he could appeal his test result. Both entities told him there was no point in trying to appeal, because no test result had ever been changed. Because he did not pass the exam, Turner was unable to obtain a nursing license in Kansas.

## II

## A

Turner asserts seven claims against the State defendants under Title II of the ADA. Title II applies to public entities and provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Turner alleges that the following conduct of the State defendants violated this provision: (1) failing to provide a location on the licensing exam application for an applicant to describe his disabilities and request accommodations; (2) denying him reasonable accommodations for the licensing exam; (3) threatening to restrict his license if he took the exam with accommodations, which both deterred him from pursuing a request for accommodations and prospectively interfered with his practice of nursing; (4) failing to provide an appeal procedure for applicants who took the licensing exam; and (5) failing to provide a format other than the CAT format for applicants taking the licensing exam. Turner sought damages and unspecified declaratory and injunctive relief against the State defendants on each of his claims.

The State defendants moved to dismiss all of Turner's claims against them based on sovereign immunity under the Eleventh Amendment. The Eleventh Amendment ordinarily grants a state immunity from suits brought in federal court by its own citizens or those of another state. <u>Chamber of Commerce of U.S. v.</u>

- 5 -

Edmondson, 594 F.3d 742, 760 (10th Cir. 2010). The immunity extends to arms of the state and to state officials who are sued for damages in their official capacity. Peterson v. Martinez, 707 F.3d 1197, 1205 (10th Cir. 2013). But sovereign immunity does not prevent suit: "(1) when Congress has abrogated the states' immunity, as in legislation enacted to enforce the Fourteenth Amendment; [or] (2) when a state waives its immunity." Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety, 722 F.3d 1209, 1212 (10th Cir. 2013). At issue here is whether Congress validly abrogated the states' sovereign immunity under Title II of the ADA with respect to claims involving professional licensing examinations. The district court concluded that it did not. We agree.

Congress unequivocally intended to abrogate the states' sovereign immunity under the ADA. See 42 U.S.C. § 12202. But the abrogation is valid only if Congress "act[ed] pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 726 (2003). To validly exercise its § 5 power and "authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment, and the remedy imposed by Congress must be congruent and proportional to the targeted violation." Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 374 (2001). "The Court has not arrived at a concrete definition of congruence and proportionality, but it is clear that Congress enjoys greater power under § 5 when it responds to a clearly discernible pattern of state

encroachment on fundamental or other important constitutional rights." Guttman v.

Khalsa, 669 F.3d 1101, 1112 (10th Cir. 2012). And "[c]ongressional regulation is

less likely to be congruent and proportional if the rights at issue are not subject to

heightened judicial scrutiny." Id.

In Guttman, this court considered "whether the accommodation requirement of

Title II is a valid exercise of the § 5 authority, as it applies to cases involving

professional licensing." Id. at 1113. The plaintiff was a physician whose medical

license was revoked based on his mental condition. He brought an ADA suit against

the state for money damages. We evaluated the plaintiff's claims using the Supreme

Court's three-step analysis in United States v. Georgia, 546 U.S. 151 (2006), which

required us to

> determine in the first instance, on a claim-by-claim basis, (1) which
> aspects of the State's alleged conduct violated Title II; (2) to what
> extent such misconduct also violated the Fourteenth Amendment; and
> (3) insofar as such misconduct violated Title II but did not violate the
> Fourteenth Amendment, whether Congress's purported abrogation of
> sovereign immunity as to that class of conduct is nevertheless valid.

Guttman, 669 F.3d at 1113 (quoting Georgia, 546 U.S. at 159). We noted that if, at

the second step, we concluded that the alleged conduct did violate the Fourteenth

Amendment, the state's immunity was validly abrogated. Id. But we found no

Fourteenth Amendment violation. Id. at 1116.

At the third step, we applied the Supreme Court's analysis in City of Boerne v.

Flores, 521 U.S. 507 (1997), to determine if the abrogation was nonetheless valid.

Guttman, 669 F.3d at 1116-17. We therefore considered:

- 7 -

> (1) the nature of the constitutional right at issue; (2) the extent to which Congress's remedial statute was passed in response to a documented history of relevant constitutional violations; and (3) whether the congressional statute is "congruent and proportional" to the specific class of violations at issue, given the nature of the relevant constitutional right and the identified history of violations.

Id. at 1117 (citing City of Boerne, 521 U.S. at 529-36). We concluded that: (1) the constitutional right the plaintiff asserted was "a disabled individual's right to practice in his chosen profession," which "does not invoke heightened scrutiny," id. at 1118; (2) "Congress did not identify a history of irrational discrimination in professional licensing when enacting Title II," id. at 1119; and (3) "in the context of the class of cases implicating disability discrimination in professional licensing," id. at 1120, the Title II remedy was not congruent and proportional, id. at 1119-25. We therefore held that "Title II does not validly abrogate [the state's] sovereign immunity in the context of professional licensing." Id. at 1125.

The district court followed Guttman in analyzing Turner's allegations. It concluded that Congress had not validly abrogated Kansas' Eleventh Amendment immunity with respect to Turner's claims. Turner challenges the district court's conclusion on several grounds. We review de novo a dismissal based on Eleventh Amendment immunity. Peterson, 707 F.3d at 1205.

Turner first argues that the district court erred in concluding that none of his claims adequately alleged a constitutional violation. Although Turner's amended complaint did not identify any constitutional violation, the court acknowledged that Turner alluded to two possible Fourteenth Amendment claims in his subsequent

briefing: (1) a substantive due process claim based on denial of access to the courts; and (2) an equal protection claim based on the alleged lack of rational basis for the Board's threat to restrict his license if he took the licensing exam with accommodations. The court concluded, however, that Turner had not adequately alleged either claim.

Turner argues that the State defendants' conduct with respect to the licensing exam was similar to a denial of access to the courts. He does so to take advantage of the Supreme Court's holding in Tennessee v. Lane, 541 U.S. 509 (2004), that "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." Id. at 533-34. But Turner has cited no authority to suggest that the alleged right of access to a licensing examination, or to a license itself, is either akin to or a part of the fundamental right of access to the courts.

Turner also contends that the State defendants violated his equal protection rights when Taylor told him that if he were to take the exam with accommodations, the license he received would be restricted. Turner argues there was no rational basis for this determination, because the Board had no evidence that his dyslexia would affect his ability to practice nursing.

"States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are

rational." Garrett, 531 U.S. at 367; see also Guttman, 669 F.3d at 1123 ("[P]rofessional licensing decisions are subject only to rational basis review, and persons with disabilities do not compose a suspect class."). "An equal protection claim will fail if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Teigen v. Renfrow, 511 F.3d 1072, 1083 (10th Cir. 2007) (quotation omitted). The district court determined that "restrictions on a nursing license earned by testing with accommodations could meet legitimate public safety and health concerns." Turner protests that the district court failed to credit his allegation that his college found his dyslexia did not adversely affect his ability to practice nursing, that the court did not explain what set of facts it relied on in finding a rational basis for the Board's action, and that the court must have improperly relied on evidence outside the pleadings to reach this conclusion.

Turner misperceives the nature of a rational basis inquiry. In performing a rational basis analysis, the court "must independently consider whether there is any conceivable rational basis for the classification, regardless of whether the reason ultimately relied on is provided by the parties or the court. This determination is a legal question which need not be based on any evidence or empirical data." Teigen, 511 F.3d at 1084 (citation omitted). The district court properly found that legitimate public safety concerns could provide a rational basis for Kansas to restrict the license of a nurse who had to take the licensing exam with accommodations in order to pass it. Because it was Turner's burden "to negative any reasonably conceivable state of

facts that could provide a rational basis for the classification," <u>Garrett</u>, 531 U.S. at 367 (quotations omitted), he failed to adequately allege an equal protection claim.

Turner also challenges the district court's conclusions at the third step of the analysis, in which the court considered whether Congress' attempt to abrogate Eleventh Amendment immunity under Title II for claims involving professional licensing was valid even in the absence of a Fourteenth Amendment claim. <u>See</u> <u>Georgia</u>, 546 U.S. at 159. Following our analysis in <u>Guttman</u>, the district court examined the nature of the right at issue, the extent to which Title II was a response to a documented history of discrimination in professional licensing, and whether Title II is a congruent and proportional remedy for such discrimination. The court concluded that "<u>Guttman</u> requires [it] to find that Title II does not validly abrogate the Kansas Board's sovereign immunity in the context of professional licensing."

Turner attempts to distinguish <u>Guttman</u>, which involved the revocation of a license, on the ground that his claims pertain to a professional licensing <u>examination</u>. He contends that this case therefore "is really just as much, or more, about education than professional licensing. Sitting for a professional licensure exam is a step in one's educational process." Turner argues that a "rote application" of <u>Guttman</u> here would "lead to a confused and confusing state of affairs" whereby a student who received accommodations throughout his education could be denied accommodations on the licensing exam necessary to enter the profession to which his education had been devoted. But our decision in <u>Guttman</u> clearly encompasses the types of claims

- 11 -

at issue in this case. We identified the specific right at issue in <u>Guttman</u> as "a disabled individual's right to practice in his chosen profession," 669 F.3d at 1118, and the category of state action as "professional licensing," <u>id.</u> at 1120. Turner's claims involve the same right and the same category of state action.

Turner also attempts to distinguish <u>Guttman</u> on the ground that in this case "there was no exigency or emergency to preserve public health that apparently animated the medical licensing body in New Mexico." This argument is equally unavailing. For purposes of the abrogation analysis, all that matters is that the level of judicial scrutiny applicable to the plaintiff's claims in <u>Guttman</u> matches that here: rational basis. Because neither case involved a higher level of judicial scrutiny, the abrogation analysis is the same. The district court did not err in following <u>Guttman</u> to conclude that the State defendants' Eleventh Amendment immunity was not validly abrogated.

**B**

The <u>Ex Parte Young</u> doctrine recognizes an exception to Eleventh Amendment immunity that "permits suits against state officials seeking to enjoin alleged ongoing violations of federal law." <u>Peterson</u>, 707 F.3d at 1205 (quotation omitted). "[This exception] rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." <u>Va. Office for Prot. & Advocacy v. Stewart, 131</u> S. Ct. 1632, 1638 (2011) (citation

omitted). "In determining whether the doctrine of <u>Ex parte Young</u> avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." <u>Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.</u>, 535 U.S. 635, 645 (2002) (alteration in original) (quotation omitted).

The district court concluded that Turner had not alleged any ongoing policy or conduct by the State defendants that violated the ADA; his allegations related solely to past conduct. It also noted that Turner did not ask for prospective relief, such as an order directing the defendants to permit him to retake the examination with accommodations. The court observed that Turner's counsel told the magistrate judge in an email following a scheduling conference that Turner did not wish to take the exam again.

Turner complains that the district court should not have relied on his counsel's representation because it was outside the pleadings and because it did not necessarily reflect Turner's long-term intentions. Notably, Turner does not deny that his counsel's statement accurately reflected his intentions at the time. In his appellate briefing, he acknowledges that "[t]he email was an expression of intent, through counsel, at the time it was sent." Turner simply contends that an order directing the defendants to allow him to retake the exam with accommodations "is the type of order of prospective relief that [he] was seeking." A court is permitted to consider

matters outside the pleadings if they are "matters of which a court may take judicial notice." Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010) (quotation omitted). Surely counsel's representation to the court that Turner did not wish to retake the exam is such a matter. Moreover, even leaving aside counsel's representation, the district court correctly determined that the Ex Parte Young exception did not apply to Turner's claims.

For the Ex Parte Young exception to apply, the relief Turner sought in his amended complaint must be "properly characterized as prospective." Verizon Md., 535 U.S. at 645 (quotation omitted); see also Hill v. Kemp, 478 F.3d 1236, 1259 (10th Cir. 2007) ("Following the Supreme Court's most recent and definitive guidance in Verizon Maryland, the sole question for us becomes whether the relief sought by [the plaintiff] is prospective, not just in how it is captioned but also in its substance."). But Turner's amended complaint did not specify what declaratory or injunctive relief he sought; it simply included in each claim's prayer for relief a request for "declaratory and injunctive relief." Turner apparently believes that all declaratory and injunctive relief is prospective. Not so. See, e.g., P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (Ex Parte Young "does not permit judgments against state officers declaring that they violated federal law in the past"); Buchheit v. Green, 705 F.3d 1157, 1159 (10th Cir. 2012) (plaintiff's request for injunctive relief requiring state court to allow him to proceed

in forma pauperis and to file his appeal was not prospective because it sought only to remedy past harms, not to prevent future violations of law).

Had Turner, for instance, sought an injunction requiring the State defendants to allow him to appeal his failing test score, that relief would not have been prospective; it would only have remedied a past alleged wrong, not prevented a future violation. See Buchheit, 705 F.3d at 1159. Because Turner's prayer for relief sought nothing more than unspecified "declaratory and injunctive relief," we cannot conclude that the relief he sought was truly prospective. The district court correctly refused to apply the Ex Parte Young exception to Turner's claims.

## C

Turner alleges that the Council violated Title III of the ADA in two ways: (1) failing to make the licensing exam available in a format other than the CAT format; and (2) failing to provide him an opportunity to appeal his score. Title III applies to public accommodations and services operated by private entities. 42 U.S.C. § 12181 et seq. It provides in pertinent part that anyone who offers professional licensing examinations "shall offer such examinations . . . in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." § 12189.

The Council moved to dismiss Turner's claims because he lacked constitutional standing or, alternatively, because he failed to state a claim. The district court concluded that Turner lacked standing because he failed to allege a

causal link between the Council's conduct and any injury he suffered. We review this conclusion de novo. See Cressman v. Thompson, 719 F.3d 1139, 1144 (10th Cir. 2013). We conclude that Turner lacked standing to assert his claim relating to the CAT format but that he did have standing to assert his claim relating to the absence of an appeal. Nonetheless, we affirm the district court's dismissal of this claim because it fails to state a claim under the ADA.

As the party asserting federal jurisdiction, Turner carries the burden of establishing his Article III standing. Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154 (10th Cir. 2005). To establish standing, Turner had to meet three requirements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between that injury and the challenged action of the defendant—the injury must be "fairly traceable" to the defendant, and not the result of the independent action of some third party. Finally, it must be likely, not merely speculative, that a favorable judgment will redress the plaintiff's injury.

Id. (citations omitted). Because the district court evaluated Turner's standing at the motion-to-dismiss stage,[3] it had to accept his material allegations as true and construe

---

[3] Turner contends that because the Council submitted affidavits and other materials outside the complaint in support of its motion, the district court erred in not converting the Council's motion to one for summary judgment. But the district court did not rely on any of those materials in disposing of Turner's claims, making conversion unnecessary. See Alexander v. Oklahoma, 382 F.3d 1206, 1214 (10th Cir. 2004) (if materials outside complaint were submitted to district court and court did not expressly exclude them, appellate court "must find that the District Court relied on this material in rendering its decision" in order to convert motion to dismiss into motion for summary judgment); cf. Gee, 627 F.3d at 1187 (district court's failure

(continued)

- 16 -

the amended complaint in his favor. Cressman, 719 F.3d at 1144. We must do the same. Id.

Turner sufficiently alleges an injury in fact: his failing exam score prevented him from obtaining a nursing license in Kansas. To show that his injury was fairly traceable to some conduct on the part of the Council, Turner had to allege facts that showed a "substantial likelihood" that the Council's conduct caused his injury. Nova Health, 416 F.3d at 1156. He did not have to allege facts that would rise to the level of proximate cause, see id., nor did he have to allege a connection between the injuries he claimed and the rights he asserted, see Duke Power Co. v. Carolina Env't Study Grp., Inc., 438 U.S. 59, 78-79 (1978).

Turner does not allege a sufficient causal connection between the Council's administration of the exam in the CAT format and his failure to pass it. He alleges that there were unspecified flaws in the CAT format and that some of these flaws related to people with test-taking anxiety, but he does not allege that any of these flaws, his own test-taking anxiety, or his inability to take the exam in another format either caused or contributed to his failure. Nor does he allege that the glitch in the exam administration that caused the program to shut down before he had answered the requisite number of questions was related to any flaws in the CAT format. His brief specifically denies any connection between the two, stating that "[t]he flaws in

to exclude materials outside complaint "is [not] reversible error [if] the dismissal can be justified without considering the outside materials" (alterations in original) (quotation omitted)).

the CAT format are not alleged to be the cause of the problem with the administration of the exam that Mr. Turner took . . . . The two problems—the format and the administration of the exam on the day Mr. Turner took it—are not connected." Because Turner's allegations do not show a causal connection between the Council's use of the CAT format and his failure of the exam, the district court properly dismissed this claim against the Council for lack of standing.

Turner does, however, allege a sufficient causal connection between his inability to obtain a nursing license and the Council's failure to give him an opportunity to appeal his score. Turner contends that the lack of an appeal injured him because of a computer glitch that prevented him from answering the requisite number of questions on the exam. The amended complaint alleges that a computer glitch caused the program to shut down before Turner had answered the minimum number of questions required by the CAT format. By not permitting Turner to appeal his score, the Council deprived him of the opportunity to obtain a remedy for an alleged malfunction that prevented him from completing the exam as required. Turner's injury was therefore fairly traceable to the Council's conduct, and the district court should not have dismissed the claim for lack of standing.

Nonetheless, the district court was correct to dismiss the claim, because it fails to state a claim under the ADA. We may affirm a district court's order "on any basis supported by the record, even though not relied on by the district court." Vaughn v. Epworth Villa, 537 F.3d 1147, 1150 (10th Cir. 2008) (quotation omitted). Even if we

assume that the Council's failure to provide an avenue to appeal an exam score could give rise to liability under the ADA, Turner's allegations are not sufficient to establish liability in this case. Turner does not allege that his inability to answer the requisite number of questions before the program shut down was related to his dyslexia or that the computer glitch was related to flaws in the CAT format that supposedly disadvantaged candidates with test-taking anxiety. Without some connection between the computer glitch and his dyslexia, the Council's failure to provide Turner an appeal is not actionable under the ADA.[4]

**III**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**. Turner's motion to file a supplemental appendix is **GRANTED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[4] In his reply brief, Turner also contends that an appeal would have given him an opportunity to complain to the Council about the CAT format. We do not consider arguments raised for the first time in a reply brief. Mays v. Colvin, 739 F.3d 569, 576 n.3 (10th Cir. 2014). In any event, the Council's failure to give Turner an appeal would not be actionable under the ADA because he does not allege that he failed the exam as a result of any flaws in the CAT format that were related to his dyslexia.